## UNITED STATES v. FORD.
### No. 948.

Circuit Court of Appeals, Tenth Circuit.
May 31, 1934.

Will G. Beardslee, Sp. Asst. to Atty. Gen. (C. E. Bailey, U. S. Atty., and A. E. Williams, Asst. U. S. Atty., both of Tulsa, Okl., and O. T. Englehart, Atty. Department of Justice, of Washington, D. C., on the brief), for the United States.

R. A. Wilkerson and Ernest R. Brown, both of Pryor, Okl., for appellee.

Before LEWIS and BRATTON, Circuit Judges, and KENNEDY, District Judge.

LEWIS, Circuit Judge.

This appeal is from a judgment on war risk insurance policies.

The first count of the complaint seeks recovery on $10,000 yearly renewable term insurance issued to the soldier during his service. It alleges that he enlisted as a soldier and was inducted into the military service October 4, 1917, and was honorably discharged November 28, 1919; that he was wounded in action on October 4, 1918, at Argonne Forest, being shot in the left shoulder, upper left arm, and the left side of his head; that since that date and ever since his discharge he has been totally and permanently disabled and rendered incapable of pursuing continuously any substantially gainful occupation without serious menace to his health.

The second count alleges that on June 1, 1920, $1,000 of the insurance named in the first count was converted into 20-payment life policy, which was issued to him by the United States, and that if he did not become totally and permanently disabled prior to June 1, 1920, as set out in his first cause of action, that he became totally and permanently disabled on or after said June 1, 1920.

The third count alleges that the remaining $9,000 of said original policy named in the first count was on July 1, 1927, converted into a 5-year convertible term policy issued to him by the United States, and alleges that if he was not totally and permanently disabled prior to July 1, 1927, he became totally and permanently disabled about said date and has ever thereafter been totally and permanently disabled. It is also alleged that all premiums accruing on each of said policies had been paid by appellee; and it was stipulated when the trial opened on February 14, 1933, that all premiums on the two converted policies had been paid up to that date.

The answer is a general denial. It also pleads the limitation act of July 3, 1930, as a bar, but the facts in the record do not enable us to pass on that point and no reliance upon that was urged here either in brief or argument. So we come to a consideration of the sufficiency of the facts to support the verdict in favor of plaintiff raised by motion of defendant to instruct in its favor at the close of all the evidence.

The plaintiff, appellee here, testified that he received a wound in the left shoulder and on the left side of the back of his head while in service on October 4, 1918, a small portion of his skull is gone, never went back to service, received these wounds in Argonne Forest, and was in the hospital most of the time thereafter until his discharge November 28, 1919. His helmet at point of the shot had been imbedded or driven into the skull so that it could not be removed at the place of first aid. On return to the United States he took vocational training for twenty-nine months in watch repairing, and had been working at that trade ever since. He first worked for Boswell of Tulsa five years and two months and thereafter for Rones of Tulsa up to the time of trial, a little over five years. He took some days off that he could not work, had head aches and nervousness and suffered severely. Sometimes his arm was weak, it would go to sleep while he was working. He suffered dizziness, especially in the summer months. His left arm is very weak. It would heal up sometimes and stay healed for a month. Then it would break down again, get sore and run pus. He thinks his physical condition has gotten worse. He notices it more. While he has been at work as stated above he has received a salary per week as high as $45 and as low as $23. While working at Boswell's he only missed a day now and then, but of late he could not work without it hurting him, and he feared he could

not continue to carry on in his present condition, but he didn't like to give in. He would go to work lots of times when he didn't feel like it. He forced himself to work. Had it not been for his persistence he didn't believe he would have worked over half time. There had been no time when he was off work as long as two months, but he had been off as long as a week.

Dr. Campbell, a physician and surgeon, was called as a witness for plaintiff. He had examined the plaintiff twice a few days before the trial and described in detail his wounds, the effect that they would have upon him, and his physical condition therefrom. He testified there had been two shattered fractures of the upper third of the humerus, a fracture of the shoulder and the scapula; that the glenoid cavity is filled with bone callous, and the abnormal head of the humerus could not enter the cavity; that he could not abduct the arm more than ten per cent away from the axis, and its movement was made possible by movements of the scapula, the arm moved with the shoulder blade; that the scars on the arm indicated a slow sloughing process of the soft tissues and confirmed the plaintiff's statement that he has had discharge of pus from the injured shoulder much of the time since the injury; that there is much destruction of soft tissue in the back of the arm and shoulder, indication of much necrosis of bone, and healing processes have left a crooked arm. The end of the scapula and the head of the humerus and the upper part of the shaft have such a thin covering of skin that it is impossible for a blood vessel in that region to sufficiently nourish the covering to keep them from breaking down, and it is likely that they will break down entirely and expose the bones, and another operation of doubtful prognosis will follow. There is low blood pressure and low specific gravity of the urine, which indicate nervousness and a weak condition. A piece of the skull about the size of a silver dollar is gone entirely. Both the inner and outer plates of the skull are gone. There were two breaks in the humerus. The nerve in the shoulder blade is very bad. It is not properly nourished on account of poor circulation. The skin and tissues over it are very thin. He pointed to different scars on the arm showing breaking down of tissue. He testified that the wound on the head would destroy a man's equilibrium and sometimes interfere with his mentality, would cause dizziness, head aches and sleepless nights; that constant work would increase those results, and it would be injurious to plaintiff to work. He doubted the advisability of taking the arm off, unless the pains became too severe. Plaintiff seemed at times to have confused ideas; that he might do light work for a while, but in his opinion the plaintiff was totally and permanently disabled.

Dr. Venable had taken an X-ray of plaintiff's injuries and exhibited it to the jury and pointed out what it showed. The plaintiff's helmet had been driven into his skull by the shot. Its mark appeared upon the X-ray. It showed a fracture of the neck of the shoulder and a complete loss of the front part of the head of the large bone of the arm, a double fracture of the shaft of the arm, the middle portion was broken entirely out of the arm, and it had healed in a much deformed position. When plaintiff tries to raise his arm, bone strikes against bone. When asked about the plaintiff following a gainful occupation, the doctor said he had heard the testimony and "it was astonishing to me that a man with the injury this man has has been able to follow any occupation;" that it had been injurious to the plaintiff to work; that it would be better for him to have motion than not to have motion, and a limited amount of work would be advisable, but watch repairing would be detrimental to the wound on the head; that it would be detrimental to the nerves; that plaintiff had been working for some time under conditions under which he should not have worked; and that in his opinion he had reached a state of total inability to attend to any gainful occupation successfully; that in his opinion the work had injured the plaintiff.

Some of the men who had worked in the two shops with plaintiff also testified. One of them from the shop where he last worked said plaintiff's condition had been growing worse, but he could not tell how long he might hold out. Each of them testified that the work plaintiff did was usually checked over before it went out and sometimes it had to be done over; that the easiest work was given to him; that they never gave him small watches; that he couldn't work steadily; that his salary for the last year had been $23 per week, it having been lowered because of hard times. Mr. Rones testified that if the work was to be completed by plaintiff it would not be satisfactory.

The trial court restricted the inquiry as to plaintiff's total and permanent disability to a time from and after April 30, 1932.

The defendant's motion for an instructed

verdict presents a close issue of law, but we cannot say there was no substantial evidence in support of the jury's finding of total and permanent disability occurring within the time as limited by the court.

Affirmed.