## UNITED STATES v. RICE.,
### No. 9859.

Circuit Court of Appeals, Eighth Circuit.
Sept. 13, 1934.

Frederick H. Wagener, Atty., Department of Justice, of Lincoln, Neb. (Charles E. Sandall, U. S. Atty., and Ambrose C. Epperson, Asst. U. S. Atty., both of Omaha, Neb., Robert Van Pelt, Asst. U. S. Atty., of Lincoln, Neb., and Fred G. Hawxby, Asst. U. S. Atty., of Omaha, Neb., on the brief), for the United States.

Hird Stryker, of Omaha, Neb. (Crofoot, Fraser, Connolly & Stryker, of Omaha, Neb., on the brief), for appellee.

Before GARDNER, SANBORN, and VAN VALKENBURGH, Circuit Judges.

VAN VALKENBURGH, Circuit Judge.

This is an appeal from a judgment upon a policy of war risk insurance, granted to appellee in December, 1917. The premiums thereon were kept fully paid to and including July 1, 1926. Appellee was raised on a farm, and his education ended with the eighth grade of a centralized school at Gooding, Idaho. He enlisted April 11, 1917, in the 2d Idaho Infantry. After landing in France this regiment was transferred to the 167th Division, 42d Infantry. Appellee served on the Loraine front, and in the campaigns of Champagne-Marne, Meuse-Argonne, and St. Mihiel. On the morning of July 20, 1918, he was given an order to be delivered to the supply company. His horse slipped on wet pavement, fell, and pinned appellee's right leg under him. The soldier was discharged from the service May 12, 1919. He started to work for his brother on a farm. His leg constantly pained him and he was at first treated for rheumatism. By the following October his leg was in such a condition that he could not work. An X-ray examination disclosed that he was suffering from bone sarcoma, and that amputation was necessary to save his life. The amputation was performed at Boise, Idaho, February 17, 1920, by Drs. Stewart and Titus; the latter being the government surgeon at Boise at that time. Appellee was laid up with the first healing of the stump for about a year. As soon as he was able to do so he made contact with the Veterans' Bureau and applied for vocational training. September, 1920, he was sent to Portland, Or., to take the trade of watch making. The Bureau there refused to give him that trade because of the size of his hands. He was sent to a small town where weaving baskets and willow furniture was taught. After five months, perceiving that there was little or no future in this, he asked for a change and was sent to Carvallis, Wash., to take up training in animal industry. A trial of a little more than a month demonstrated that his condition made it impossible for him to do the heavy work necessary in the raising and caring for live stock. The Veterans' Bureau next sent him to take a course in bookkeeping at Boyles College,

Omaha. He stayed there about eleven months, and then tried actual work, at first with a bank, and next with an insurance company. At the former, whether standing or sitting, the pressure from an artificial limb caused unendurable pain, and the stump was covered with abscesses. In less than a week the insurance company advised the Bureau that it could not use appellee because of his penmanship. He next tried poultry raising, but was unable to do more than watch the incubators, while his wife was compelled to do practically all the work required. A café venture at Havelock, Neb., in which his only service was to act as cashier, was terminated by the death of his wife and the loss of the money invested. Thereafter he tried to work at various kinds of employment, but without success. He tried several artificial limbs, but he was a heavy man and the pain and abscesses resulting from pressure rendered their use impracticable.

The claim from the testimony offered is that he was unable to work with such continuity as to carry on a substantially gainful occupation within the meaning of the established rule. He kept up his premium payments for a period of about seven years after his discharge, and as long as he was financially able to do so. The sole question presented is whether he was totally and permanently disabled while the policy was in force.

At the hearing the government restricted the errors relied upon to two:

1. That the court erred in overruling the motion of the defendant for a directed verdict at the close of all the evidence; and

2. That the court erred in refusing the following instruction requested by the defendant: "If, from the evidence, you find that the plaintiff is possessed of sufficient mental attributes to qualify himself for some occupation which would require a minimum of physical activity in fitting with his physical disability, and which could be followed by him continuously, and would be sufficiently gainful, then your verdict must be for the defendant."

1. The foregoing statement of facts, with respect to appellee's efforts to work, and the extent of his activities, is necessarily brief and condensed. The only extended periods of gainful employment were about six months in the garage of his brother-in-law, Gillespie, who gave him a place to live and "enough cash to get by on," saying: "I did not figure that he did a man's work, or anywhere near a man's work during the time he worked for me. I absolutely would not have employed him at all if he had not been my brother-in-law." And again, about eight and one-half months in a garage at Mullen, Neb., during which time he was paid on all accounts about $188.92. Mr. Mathews, proprietor of this garage, testified that "he failed to make satisfactory to me because he could not get around on the cement floor, and I told him his labor was dissatisfactory and I would have to get somebody to take his place." His pay was supposed to be $15 per week, but his pay checks were frequently much less than that because he had been compelled to "lay off" part of the week on account of his crippled condition.

The main contention of the government is that the loss of one leg, while permanent, does not per se constitute total disability, and that there are many things that a man with one leg can do in the pursuit of a substantially gainful occupation. This statement, while true, is not necessarily conclusive in all cases, each of which must depend upon its own peculiar facts. The medical testimony introduced by appellant also sought and tended to minimize the seriousness of appellee's physical condition. It may be conceded that cases of this nature often present problems difficult of solution, and that decisions may be found which seem to lend support to apparently conflicting conclusions. But, in the case before us, we are of opinion that appellee has established his case by testimony sufficient to entitle it to receive the finding of a jury upon the issues presented. Compare the decision by the Circuit Court of Appeals for the Tenth Circuit in United States v. Ford, 71 F.(2d) 83. He received a grievous injury in the service which developed into a disability, certainly permanent, and reasonably total within the meaning of the applicable rule. The nature of such a disability is thus fairly stated by the trial court in its charge:

"By a 'total disability' is meant not necessarily that the man is flat on his back or bedridden, unable to move at all, but it means that assuming a good faith continuous and continued endeavor and effort on his part his disability is such as to render it impossible for him to carry on continuously a substantially gainful occupation. By 'substantially gainful occupation' is meant an occupation that produces and gains a man a fair and decent living having regard to his station, and by 'continuously carry on' is not meant necessarily that he should work every day, so many hours per day, but that he should be able to carry on assuming, as I say, a fairly good

678

faith effort, but not assuming any such strain and endeavor as would jeopardize his health or his life, but he should carry on with reasonable and fair regularity, having in mind the way in which occupations are carried on under our system in this country."

The soldier commendably kept up his insurance premiums so long as his ability to meet them continued—a period of seven years. He made every effort to qualify himself to earn a living by application to the Veterans' Bureau for vocational training commensurate with his mental and physical equipment. His efforts were seriously and earnestly made, and were apparently so regarded by the Bureau. The record discloses no period of sustained employment and substantial earnings. We think appellee has established his right to the judgment of a jury within the rules laid down by this court generally in a large number of decided cases to which we firmly adhere. . Decisions in this and other jurisdictions which have been cited by counsel for the government in conceived opposition to this view may be successfully distinguished upon their facts.

2. The requested instruction, for the refusal of which error is assigned, is, we think, too general in its language and lacking in clarity; but, in any event, the matter in contemplation is clearly and correctly stated in the charge of the court, and the requested instruction was properly refused.

It follows from what has been said that the judgment below should be affirmed, and it is so ordered.