## WALSH v. UNITED STATES.

District Court, D. Minnesota, Third Division.

Oct. 10, 1938.

Peter S. Rask, of Minneapolis, Minn., for plaintiff.

Russell C. Rosenquest, Asst. U. S. Atty., of St. Paul, Minn., for the United States.

SULLIVAN, District Judge.

This is a suit on a Government War Risk Insurance policy. The plaintiff entered the military service on June 29, 1916, and was honorably discharged therefrom on March 17, 1919. While in the service, he obtained a policy of War Risk Insurance which lapsed for nonpayment of premiums. The contract of insurance was thereafter reinstated, and on March 1, 1927, was converted into Government life insurance. Premiums were paid to September 1, 1934, and the policy lapsed for nonpayment of premiums on October 1, 1934.

The plaintiff was born on December 1, 1897, was married on December 17, 1917, and has three children, of the ages of ten, fifteen and eighteen years. He has a common school education. He served overseas in the World War from September, 1918, to March, 1919.

It is the claim of the plaintiff that on September 30, 1934, while the said policy of insurance was in full force and effect, he was totally and permanently disabled within the meaning of the terms of the contract of the said Government insurance by reason of the fact that at said time he was suffering from valvular heart disease, mitral stenosis and chronic duodenal ulcer, and nervous and mental disease, namely, major hysteria and psychoneurosis.

On February 11, 1937, the plaintiff filed with the Veterans Administration, at Washington, District of Columbia, a claim for, with his records and proof of, total and permanent disability benefits under said converted contract of Government insurance, and on August 27, 1937, the Director of said Veterans Administration denied said claim. Accordingly, at the time of the institution of this suit, a jurisdictional disagreement existed as to the claim.

The plaintiff and his wife testified at the trial, and their testimony generally supports the contentions and claims set out in the complaint herein.

Two medical witnesses testified on behalf of the plaintiff that on the date of his examinations during the month of April, 1938, the plaintiff was of normal weight and well muscled, but showed a deformity of his duodenal cap which indicated that he was suffering from an active duodenal ulcer, and that it was their opinion that during the month of September, 1934, and at the present time, plaintiff was and is

suffering from mitral stenosis, paroxysmal tachycardia (excessive rapid beating of the heart), chronic duodenal ulcer and major hysteria; that the heart condition is "compensated"; that hysteria is a functional nervous disorder based upon either conscious or unconscious conflict in the emotions; and that all of the above ailments are permanent. One doctor stated that the insured is a poor surgical risk for operative treatment of the ulcer because of his heart ailment and hysteria, and the chronic condition of the ulcer; that the insured should not operate an automobile and should not be around machinery; that while he could be employed at a desk job, he could not follow any sustained occupation at that desk. However, on cross-examination the witness testified that insofar as the hysteria is concerned, work would be good for him; that with reference to the heart condition, work such as office or desk work where no physical exertion or intense excitement are involved, could be done by him without danger to his health, were he qualified to do such work by education; and that as to the duodenal ulcer, providing the same was controlled by diet and allowing for certain pain and discomfort therefrom, it would not prevent him from engaging in a type of work requiring limited exertion and effort. The other doctor expressed the opinion that the plaintiff has, and did in September, 1934, have, a definite mitral stenosis which impairs him to the point that he is not able to do any active work; that he should be restricted from all heavy manual labor, excessive walking, and should avoid hurrying; that his walking should be limited; that manual labor, lifting or bending, or anything that requires "any effort" should not be undertaken. "He can lead a fairly normal life if you bar physical efforts, if that is minimized."

Three medical witnesses testified for and on behalf of the Government. All of these doctors are in accord with the opinion that the plaintiff now has, and in September, 1934, was afflicted with, valvular heart disease, termed mitral stenosis; and stated that the same was entirely "compensated" and that mitral stenosis is a permanent condition. One of the doctors for the Government, in addition to expressing an opinion that plaintiff was suffering from mitral stenosis, stated that at the time of his examination in the summer of 1937, plaintiff was not suffering from major hysteria, but was anxious, concerned and apprehensive over his physical condition. Another of the doctors for the Government testified that the plaintiff was not afflicted with major hysteria, but that he was suffering from a psychoneurosis, of the anxiety type. Both of these doctors are of the opinion that this nervous condition will disappear, and that the plaintiff will recover from that ailment. The doctors for the Government are in agreement that it would not be harmful to, or aggravate the heart condition of, the plaintiff if he were to engage in activities other than heavy manual labor, and that he would be able to carry on any ordinary, reasonably active occupation without any disturbance arising from the heart condition; that work would be beneficial to his nervous condition. They made no extensive examination of the plaintiff for duodenal ulcer, but do express the opinion from the examination which they made that the plaintiff was not suffering from duodenal ulcer at the time of their examination.

The burden of proving permanent and total disability, while the insurance contract was in effect, is upon the plaintiff. U. S. v. Harth, 8 Cir., 61 F.2d 541. There appears to be no question but what the plaintiff is suffering from a permanent disability, and the sole question is, is that permanent disability total? In other words, the medical testimony is in accord that the plaintiff is suffering from a heart condition known as mitral stenosis, and that this is permanent. There is disagreement between the doctors as to whether or not the disability occasioned by the heart condition is total.

Many definitions in interpreting and applying the rule of total and permanent disability given by the Treasury Department and adopted in connection with suits on policies of War Risk Insurance have been stated by the courts. In United States v. Rice, 8 Cir., 72 F.2d 676, Circuit Judge Van Valkenburgh, speaking for the Court, approves the rule laid down by the Circuit Court of Appeals for the Tenth Circuit in United States v. Ford, 71 F.2d 83, as follows [page 677]: "By a 'total disability' is meant not necessarily that the man is flat on his back or bedridden, unable to move at all, but it means that assuming a good faith continuous and continued endeavor and effort on his part his disability is such as to render it impossible for him to carry on continuously a substantially gainful occupation. By 'substantially gain-

ful occupation' is meant an occupation that produces and gains a man a fair and decent living having regard to his station, and by 'continuously carry on' is not meant necessarily that he should work every day, so many hours per day, but that he should be able to carry on assuming, as I say, a fairly good faith effort, but not assuming any such strain and endeavor as would jeopardize his health or his life, but he should carry on with reasonable and fair regularity, having in mind the way in which occupations are carried on under our system in this country."

In United States v. Phillips, 8 Cir., 44 F.2d 689, Judge Kenyon, speaking for the Court, said [page 691]: "The term 'total and permanent disability' does not mean that the party must be unable to do anything whatever; must either lie abed or sit in a chair and be cared for by others. The test laid down in the cases is well stated in United States v. Sligh (C.C.A.) 31 F.2d 735, 736, as follows: 'The term "total and permanent disability" obviously does not mean that there must be proof of absolute incapacity to do any work at all. It is enough if there is such impairment of capacity as to render it impossible for the disabled person to follow continuously any substantially gainful occupation.'"

In Nicolay v. United States, 10 Cir., 51 F.2d 170, Judge McDermott, speaking for the Court, stated as follows [page 173]: "* * * the word 'impossible' must be given a rational meaning; it cannot fairly be said that it is 'possible' for an insured to work because, under the stimulus of a strong will power, it is physically possible for him to stick to a task, if the work is done at the risk of substantially aggravating his condition."

"Spasmodically is not continuously." United States v. Cornell, 8 Cir., 63 F.2d 180, 181.

If the testimony offered by the plaintiff in the case is to be believed, it must be concluded that he is unable to follow with any reasonable regularity, any substantially gainful occupation. The doctors testifying for the plaintiff state that he should refrain from any employment which occasions any exertion, that his walking should be very limited. One of the doctors states that he could not follow any sustained occupation at a desk. It appears that he has not the educational qualifications for a position at a desk job. He has an eighth-grade education, with no particular training in any line of office work. His occupation since leaving the Army has been that of a salesman, first in soliciting small building contract jobs; second, in selling used lumber for a short period of time, and third, in the sale of used cars. Such work, of course, requires a certain amount of physical effort, and necessarily considerable walking in any one of such jobs. Because of the heart condition from which this man is suffering, it appears not only dangerous for the man himself, but for others, for him to operate and drive an automobile. It does not appear from the record that this man is fitted for any other occupation than that of a salesman in certain limited lines.

[redacted] The plaintiff, on February 26, 1934, and on December 6, 1934, in making application for reinstatement of his Government life insurance policy, and in making application for an automobile driver's license, respectively, stated that he was in good physical condition and was suffering from no permanent disability. These, of course, are statements against interest, and have been considered by the Court. The testimony in the case positively contradicts these statements made by the plaintiff as to his physical condition. "Neither court nor jury may credit testimony positively contradicted by physical facts." United States v. McGill, 8 Cir., 56 F.2d 522.

[redacted] Employment may be of such duration and of such a nature as to refute a claim of the insured that he was totally and permanently disabled prior to, and during the employment. Nicolay v. United States, supra; United States v. Le Duc, 8 Cir., 48 F.2d 789. But is the work record of the plaintiff in this case such as to refute his claim that during the month of September, 1934, he was totally and permanently disabled? The work record does not show any sustained employment, nor does it show substantial earnings. The plaintiff earned approximately the sum of $1,800 during the period of four years which have been accounted for in the testimony. The testimony shows the efforts of the plaintiff, his wife, and his son, in obtaining this income. The wife states that she and her son at many times assisted plaintiff in and about the used car lot, and in conveying him to and from the used car lot. It appears that most of the business done by the plaintiff was in the solicitation of prospects over the telephone, and then going to the lot with the prospects and showing the used

cars in endeavoring to close deals for such cars. It cannot be said that such employment is either regular, continuous or sustained. The efforts of plaintiff were seriously and earnestly made, and it is apparent from the record that the plaintiff, despite his physical condition, made every effort to earn a livelihood, but the remuneration for his efforts does not show that he was able to earn such amounts as should be expected from regular and sustained employment.

The Court is of the opinion that anyone who is suffering from a heart affliction such as the plaintiff's, with the additional ailments of major hysteria and a duodenal ulcer, and one who is fitted by training only to engage in some occupation requiring physical exertion, should be classed as totally disabled. He has not the education to engage in mental work, nor is he able to carry on any sustained effort at such a position, were he qualified therefor.

The evidence establishes that the plaintiff, during the life of the policy, was totally and permanently disabled, and that his disability renders it impossible for him to pursue any gainful occupation with any regularity, and judgment is accordingly ordered in favor of the plaintiff.