Dorothy A. BOSTICK, Plaintiff,

v.

Marion B. FOLSOM, Secretary of Health, Education and Welfare, Defendant.

Civ. A. No. 1346.

United States District Court
W. D. Arkansas,
Fort Smith Division.

Nov. 26, 1957.

Bethell & Pearce, Fort Smith, Ark., for plaintiff.

Charles W. Atkinson, U. S. Atty., Robert E. Johnson, Asst. U. S. Atty., Fort Smith, Ark., for defendant.

JOHN E. MILLER, District Judge.

By this action plaintiff seeks to establish a period of disability under the Social Security Act, 42 U.S.C.A. § 416(i). Plaintiff has exhausted her administrative remedies, and brings the instant suit under 42 U.S.C.A. § 405(g), requesting the Court to review the adverse decision of the Referee of the Office of Appeals Council, Social Security Administration, Department of Health, Education and Welfare. Plaintiff sought a review of the Referee's decision by the Office of Appeals Council, and was denied such review on February 20, 1957.

The instant action was filed April 3, 1957, and in due time the Secretary of the Department of Health, Education and Welfare, in accordance with 42 U.S.C.A. § 405(g), filed a certified copy of the transcript of the administrative record, including the evidence upon which the findings and decision of the Referee are based.

The jurisdictional statute, 42 U.S.C.A. § 405(g), supra, provides, inter alia:

" * * * The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive * * *."

In a very recent case this Court set out some of the general rules governing cases of this type, and the Court feels that it would be advisable to restate those rules in this opinion. In Fuller v. Folsom, D.C.W.D.Ark., 155 F. Supp. 348, 349, the general rules were stated as follows:

"The burden of proof, both before the Referee and in the instant proceeding, is upon the plaintiff. Thurston v. Hobby, D.C.Mo., 133 F.Supp. 205; Norment v. Hobby, D.C.Ala., 124 F.Supp. 489. Not only are the findings of fact made by the Referee, if supported by substantial evidence, conclusive, but a majority of courts also extend the finality of the Referee's findings to inferences and conclusions which he draws from the evidence, if there is a substantial basis for the conclusions. Rosewall v. Folsom, 7 Cir., 239 F.2d 724; United States v. LaLone, 9 Cir., 152 F.2d 43; Social Security Board v. Warren, 8 Cir., 142 F.2d 974; Walker v. Altmeyer, 2 Cir., 137 F.2d 531; McGrew v. Hobby, D.C. Kan., 129 F.Supp. 627; Hemmerle v. Hobby, D.C.N.J., 114 F.Supp. 16; Schmidt v. Ewing, D.C.Pa., 108 F. Supp. 505; Holland v. Altmeyer, D.C.Minn., 60 F.Supp. 954.

"The Referee's conclusions of law, however, are not binding upon the Court, although they are entitled to great weight. See, Miller v. Burger, 9 Cir., 161 F.2d 992; Carroll v. Social Security Board, 7 Cir., 128 F.2d 876; Ayers v. Hobby, D.C.Va., 123 F.Supp. 115; Ray v. Social Security Board, D.C.Ala., 73 F.Supp. 58.

"And in reviewing the decision of the Referee, the Court must not abdicate its conventional judicial function. Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 490, 71 S.Ct. 456, 466, 95 L.Ed. 456; Shields v. Folsom, D.C. Pa., 153 F.Supp. 733, 734."

These general rules are well established, and must be followed by the Court in the instant case.

The issue presented to the Referee was whether plaintiff had established a period of disability within the meaning of 42 U.S.C.A., § 416(i) which provides, inter alia:

"(i) (1) Except for purposes of sections 402(d), 423 and 425 of this title, the term 'disability' means (A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration, * * *. An individual shall not be considered to be under a disability unless he furnishes such proof of the existence thereof as may be required. * * *

"(2) The term 'period of disability' means a continuous period of not less than six full calendar months (beginning and ending as hereinafter provided in this subsection) during which an individual was under a disability (as defined in paragraph (1) of this subsection). No such period shall begin as to any individual unless such individual, while under a disability, files an application for a disability determination with respect to such period; and no such period shall begin as to any individual after such individual attains the age of sixty-five. * * *

\* \* \* \* \*

" * * * A period of disability shall end with the close of the last day of the first month in which either the disability ceases or the individual attains the age of sixty-five."

As noted by this Court in Fuller v. Folsom, supra, there apparently have been no generally reported decisions construing the disability freeze provision of the statute, the only decisions being memorandum decisions reported in looseleaf services. Thus the Congressional record should be helpful to the Court in construing the statute. Senate Report 1987, July 27, 1954; House Report No. 1698, May 28, 1954; and Conference Report No. 2679, August 20, 1954, may be found in Volume 3, U.S. Code Congressional and Administrative News, 1954, page 3710 et seq.

Beginning at page 3729 it is said:

"A. Need for disability freeze

"Under present law old-age and survivors insurance rights are impaired or may be lost entirely when workers have periods of total disability before reaching retirement age. Unless the worker is already permanently insured when he becomes disabled, he may have lost his fully insured status when he reaches retirement age because the entire period of his disability is included in the elapsed time which is the basis for determining his insured status. When benefit amounts are computed under present law, whether for retirement benefits or survivors benefits, his total earnings after a specified starting date and up to age 65 or death are divided by the total elapsed time, including any periods of total disability, in determining his average monthly wage, on which monthly benefits are based. A freeze of old-age and survivors insurance status during extended total disability would remove this disadvantage by preventing such periods of disability from reducing or denying retirement and survivors benefits. In addition there is available to the disabled individual the 4- or 5-year dropout period provided by this bill for all persons.

"Such a freeze provision is analogous to the 'waiver of premium' commonly used in life insurance and endowment annuity policies to maintain the protection of these policies for the duration of the policyholder's disability. About 200 life-insurance companies (many of the largest) operating in the United States offer a 'waiver of premium' clause to individuals purchasing ordinary life insurance. It has been estimated that about half of the standard ordinary life insurance issued currently is protected through 'waiver of premium' in the event of the disability of the insured.

"B.   Emphasis on rehabilitation

"Your committee recognizes the great advances in rehabilitation techniques made in recent years and appreciates the importance of rehabilitation efforts on behalf of disabled persons. It is a well-recognized truth that prompt referral of disabled persons for appropriate vocational rehabilitation services increases the effectiveness of such services and enhances the probability of success. The bill is framed to carry out your committee's objective that disabled individuals applying for disability determinations be promptly referred to State vocational rehabilitation agencies, to the end that as many disabled individuals as possible may be restored to gainful work.

\*      \*      \*      \*      \*

"D.   Definition of disability

"Only those individuals who are totally disabled by illness, injury, or other physical or mental impairment which can be expected to be of long-continued and indefinite duration may qualify for the freeze. The impairment must be medically determinable and preclude the individual from performing any substantial gainful work. \*  \*  \*

"There are two aspects of disability evaluation: (1) There must be a medically determinable ' impairment of serious proportions which is expected to be of long-continued and indefinite duration or to result in death, and (2) there must be a present inability to engage in substantial gainful work by reason of such impairment (recognizing, of course, that efforts toward rehabilitation will not be considered to interrupt a period of disability until the restoration of the individual to gainful activity is an accomplished fact). The physical or mental impairment must be of a nature and degree of severity sufficient to justify its consideration as the cause of failure to obtain any substantial gainful work. Standards for evaluating the severity of disabling conditions will be worked out in consultation with the State agencies. They will reflect the requirement that the individual be disabled not only for his usual work but also for any type of substantial gainful activity.

"Disability must have lasted for 6 months before it may be considered. This provision is intended to exclude from consideration temporary conditions which terminate within 6 months.

"In prescribing that the freeze apply only in the case of impairments 'which can be expected to be of long-continued and indefinite duration' your committee seeks to assure that only long-lasting impairments are covered. This provision is not inconsistent with efforts toward rehabilitation since it refers only to the duration of the impairment and does not require a prediction of continued inability to work. An individual would not meet the definition of 'disability' if he can, by reasonable effort and with safety to himself, achieve recovery or substantial reduction of the symptoms of his condition.

"E.   Determinations of disability

"By and large, determinations of disability will be made by State agencies, administering plans approved under the Vocational Rehabilitation Act. This would serve the dual purpose of encouraging rehabilitation contacts by disabled persons and would offer the advantages of the medical and vocational case development undertaken routinely by the rehabilitation agencies. These agencies have well-established relationships with the medical profession and would remove the major load of case development from the Department.

"By agreement, the State agencies will apply the standards developed for evaluating severity of impairments for purposes of the freeze. This will promote equal treatment of all disabled individuals under the old-age and survivors insurance system in all States."

The Referee concluded that plaintiff had not established a period of disability, and the question before the Court is whether the Referee's findings of fact are supported by substantial evidence, and whether his conclusions of law are correct. The Referee's decision indicates that he gave careful consideration to the evidence and made a full and fair statement of the testimony. The following findings of fact of the Referee are supported by substantial evidence, and must be accepted by the Court:

"In the application which she filed on September 30, 1955, the claimant stated that she first became unable to engage in substantial work on July 15, 1951 at the stated age of 44. She completed three years of college work and business college and had been employed as office manager for a fund raising firm from February 1947 to July 1951, working an average of 200 hours per month with average monthly earnings of $450. She gave the nature of her illness as food and drug allergy with menopause complications, which because of loss of weight and reserve strength prevented her from continuing in her job. In describing her daily activities she said that on some days she was able to do some work on the lawn and in the home, but that on other days she was unable to do anything and was not able to do anything requiring responsibility. In her request for reconsideration the claimant stated that the limited diet her food allergies forced upon her had caused loss of weight and energy to the point where she was unable to do anything at all except for an hour or two on occasion. She said that it was necessary that she prepare her diet at regular 3-hour intervals which would preclude her from any office work.

"The wage record shows that the earnings requirements for disability purposes are met as there are, with the exception of one quarter in 1949, regular and consistent postings from the first quarter of 1944 through the fourth quarter of 1951. The earnings requirements were last met in the quarter ending September 30, 1953.

"The medical evidence in the record shows that beginning in July 1951 the appellant began to complain of nausea, vomiting and diarrhea after ingestion of certain foods, hot flashes, nervousness, weakness, irregular menses, and migraine headaches. The reporting physician stated that the objective findings were present only when she was having acute exacerbations of any one of her several allergic reactions and that the physical findings and laboratory studies were otherwise within normal limits with the exception of iron deficiency anemia. The diagnoses are gastrointestinal and respiratory allergies; menopausal syndrome; allergic migraine; iron deficiency anemia. She had been under medical management with special reference to detail dietary control in terms of the

selection and preparation of goods, making it necessary for her either to prepare her menus or to have benefits of special kitchen facilities. Under this regime she was reported to have shown slight improvement in terms of weight gain and lessened frequency and severity of her allergic reactions. Her physician stated that the disability was total but not permanent.

"Before the referee the claimant testified that she first became unable to continue in substantial work on July 15, 1951. Prior to that date and for a number of years previously, the claimant and her husband had been engaged as consultants in fund raising campaigns for Beaver Associates, which work, according to the claimant's testimony, necessitated extensive travel. Her work consisted primarily of office management on various fund raising projects. Her husband directed all organization and activities of various local committees engaged in such projects. The last work in which she engaged was for the St. Paul's Episcopal Church in Milwaukee, Wisconsin in July 1951. Since 1948 the claimant and her husband have lived on a four-acre farm in Arkansas. The claimant has remained in Arkansas and her husband works in various fund raising campaigns throughout the United States. Beginning in July 1951 the claimant had attacks of nausea, vomiting, and diarrhea after ingestion of certain foods, hot flashes, nervousness, weakness, irregular menses, and migraine headaches. She also suffers from an iron deficiency anemia. She testified that she constantly ran into allergic reactions from food eaten in restaurants causing acute sinus attacks and soreness behind the ears, etc. The condition was not diagnosed as allergy until 1949 but she has been under the care of physicians all her life for various symptoms. She was under the care of Dr. Chamberlain for two years before she quit work, and has had seven operations, last surgery being in 1943. Her activities since quitting work have consisted of some lawn work around the home on some days; other days she is unable to do anything, and usually can engage in sustained activity an hour or two at a time. She further testified she is required to prepare her special diet every three hours which precludes her from any sustained office work. While it is not denied that the claimant is qualified through education and experience to perform clerical and office duties, she contends that she is and has been unable physically to do such work since July 1951. From personal appearance she is a highly intelligent individual, somewhat nervous in temperament and a little underweight.

"Before the referee Dr. C. T. Chamberlain testified that he graduated from Tulane University in 1931 and has been practicing since that time. He did undergraduate (postgraduate) work from 1931 through 1935 specializing in internal medicine. The claimant came under his care about August 29, 1949. His first examination disclosed that she was underweight and had an iron deficiency with definite evidence of vitamin deficiency. He referred to his January 1956 report describing the claimant's allergies to certain foods, her respiratory tract allergy in terms of sinus infection of membranes of upper respiratory tract, skin allergic reactions, and her reactions during the menopause period. These factors constituted the basis for the doctor's recommendation that the claimant stop work rather than try to maintain her on an ambulatory basis. He further testified that the claimant was making no progress in her treatment of allergies as long as she was working, that the menopause was of indeterminate duration, and that she has

improved under treatment since quitting work but has not completely recovered. She sees the doctor at regular monthly intervals and has been under 'medical management', which includes selection and preparation of foods, administration of various hormones and sedatives, treatment of anemia consisting of an iron preparation by mouth.

"Dr. Chamberlain further testified that the claimant's condition is better than in 1949, but it was his opinion that if she returned to work now that in several months she would be in the same predicament as she was previous to the time he began treating her. Any kind of work that would interfere with the claimant's being able to prepare her own food or to have time off when migraine headaches attack or other allergic reactions developed, including attacks of diarrhea, etc., would make her regular employment unfeasible. He considers the claimant totally disabled now and has been since 1951. Migraine headaches are associated with menstrual periods—occurring any time during, in, or after the cycle; hospitalization is not yet necessary. He further testified that the claimant was totally unable to do even her housework. He has been able to control the anemia by diet. His records also disclose that the claimant's weight has varied from 126 pounds in 1949 to 102 pounds on August 1, 1956. He further testified that the claimant is allergic to many medicines, eggs, ham, cheese, milk products (except butter), and oleo. She cannot eat any corn products, nuts, legumes, melons, no fruit except grapefruit and lemon, and she can eat canned but not fresh pineapple. She lives principally on meat, except fresh pork, potatoes, bread, and coffee. The claimant now takes a certain preparation to control spasm of colon which goes with allergies and other preparations prescribed by the physician during these various attacks.

"There is also in evidence a statement from Dr. Roy E. Schirmer dated August 8, 1956, which states that he first saw the claimant in 1949 complaining of colon trouble and tightness in the throat. A complete series of skin tests was done, and a few positives were observed; among them, wheat, egg white, shrimp, and some condiments. The physician further states that the claimant has improved somewhat in the intervening years; however, it is his opinion that if she went back to work, eating in hotels, restaurants, etc. (which would certainly alter the routine she is now on) that all that has been gained would be lost. In 1953 the physician attempted to locate food supplements for her, but was unsuccessful because those available were derived from casein. While she does not show a reaction to milk, this was determined in elimination diet. The physician expresses the opinion that after menopause he is doubtful that she will experience any reduced sensitivity. He suggests that she not go back to her job as campaign organizer.

"There is also in the record a statement from the Counselor of the Division of Vocational Rehabilitation who has interviewed the claimant, and after careful consideration of her full vocational history and work record he concludes she is a well trained individual who has held substantial and responsible positions over the years. Her situation, as he sees it, is not a matter of retraining but a question of whether she is physically able to enter regular employment. Vocationally, she is eminently employable even in the local area, at least in a field allied to one in which she has worked. He further concludes that if in the future she and her physician feel she is able to re-enter employment, he will work

with her in every way in securing her placement in substantial employment.

\*　　\*　　\*　　\*　　\*

"The referee has given careful consideration to the entire evidence and to the contentions of the claimant. The medical evidence shows that objective findings were present only when the claimant was having exacerbations of any one of her several allergic reactions and that the physical findings and laboratory studies were otherwise within normal limits, with the exception of her iron deficiency anemia. This it appears exists to some degree but is not severe. The diagnoses are gastrointestinal and respiratory allergies; menopausal syndrome; allergic migraine; and iron deficiency anemia. She has been under medical management with special reference to detail dietary control in terms of the selection and preparation of foods, making it necessary for her either to prepare her menus or to have benefit of special kitchen privileges. Under this regime she was reported to have shown slight improvement in terms of weight gain and lessened frequency and severity of her allergic reactions. Her physician stated that her disability was total but not permanent."

After stating the issues, discussing the pertinent statutes, making the above quoted findings of fact, and referring to the intent of Congress in enacting the disability provision of the Social Security Act, the Referee reached the following conclusion:

"In the light of the entire evidence, the referee finds that the claimant does not have a medically determinable physical or mental impairment which can be expected to be of long-continued and indefinite duration or one that so seriously affects her over-all ability that she is continuously unable to engage in any type of substantial gainful activity. While the evidence discloses that she is suffering from a menopausal syndrome and an allergic disturbance which may cause general discomfort and inconvenience, it does not appear that these conditions have existed to a degree of severity which would have continuously affected her over-all ability to the extent that they have prevented her from engaging in any substantial gainful activity and which can be expected to continue indefinitely in the future. While her special dietary requirements are a handicap, it would not seem that such would preclude the claimant from engaging in clerical or office work for which she is qualified and which it appears could be obtained locally in lines similar to that in which she is qualified.

"It is the decision of the referee that the claimant is not entitled to a period of disability under section 216(i) of the Social Security Act, as amended, for the reasons heretofore stated."

The defendant contends that the Referee's conclusion is based upon substantial evidence and is in accordance with the law. Contrarily, the plaintiff contends that the Referee's conclusion is not supported by substantial evidence, and is the result of an erroneous construction of the law.

█ The above quoted conclusion of the Referee seems to be a combined finding of fact and conclusion of law. The Referee's mixed finding of fact and conclusion of law that plaintiff's condition was not such as would preclude her from engaging in any substantial gainful activity, and was not expected to be of long-continued and indefinite duration, is not supported by substantial evidence.

The only physician who has treated plaintiff regularly during the period from 1949 until the date of the hearing is Dr. C. T. Chamberlain. He testified fully concerning plaintiff's condition, and his testimony is summarized in the fol-

lowing quotation from page 43 of the record:

"Q. Doctor is it or is it not your opinion that Mrs. Bostick is permanently and totally disabled? A. I wouldn't say 'permanently', Sir. I would say 'totally' at the moment, and I think the duration of it is indeterminate.

"Q. Has she been totally disabled in your opinion to do any gainful activity? A. Definitely, Sir.

"Q. Since July 1951? A. Yes, Sir, definitely, Sir, in my opinion, definitely so."

Dr. Chamberlain's testimony was corroborated by a statement of Dr. Roy E. Schirmer.

There was no substantial medical evidence, or for that matter any other substantial evidence to the contrary.

The only matters in the record which could in anywise raise any question as to plaintiff's disability are the "Disability Determination", appearing at pages 71 and 72 of the record, and the letter of Harold L. Overbey, Chief, Disability Determination, to Arthur Hess, Assistant Director, Bureau of Old-Age and Survivors Insurance, appearing at page 88 of the record.

The "Disability Determination" was signed by a person with the title of "Medical Consultant" and by a person designated as "Chief, Disability Determination", the signatures of neither of said persons being legible, and by another person whose title and signature are both illegible. Apparently these persons studied a medical report of Dr. Chamberlain, dated October 7, 1955, and reached the following conclusion: "The disabilities shown, either alone or in combination do not appear to be of a nature as to cause severe disability. * * * Held, that the applicant is not severely disabled." The record does not show the qualifications of the persons making the "Disability Determination" nor the reasons for their determination.

The letter of Overbey to Hess reads as follows:

"Pursuant to your directive of 3–23–56, this State Agency Team has made a careful study of the medical information, both original and recent, available, in connection with this application for a Disability Wage Freeze.

"Our finding is, that we still have no medical evidence of a severe disability of a permanent nature. Therefore, we maintain that our original finding in this case was correct and should stand."

Again there was no showing as to the qualifications or the identity of the members of the State Agency Team.

■ The Court is of the opinion that the "Disability Determination" and the letter of Overbey are not substantial evidence, and in any event do not purport to establish the question now before the Court. The "Disability Determination" merely indicates that the persons making such determination were of the opinion that plaintiff was not "severely disabled", and the letter of Overbey simply indicates that in the opinion of the State Agency Team, on the basis of the medical information available to them at that time, plaintiff did not have a "severe disability of a permanent nature".

Neither the "Disability Determination" nor the letter of Overbey purport to say whether plaintiff was unable to engage in any substantial gainful activity or whether her condition was expected to be of long-continued and indefinite duration. It must also be remembered that the opinions of the persons making the "Disability Determination" and of the State Agency Team were based upon the medical information available to them at that time. They had no opportunity to see or examine the plaintiff, and they did not have the benefit of the complete medical information given by Dr. Chamberlain in his testimony before the Referee.

As above stated, therefore, neither the "Disability Determination" nor the letter of Overbey constitute substantial evidence sufficient to support the Ref-

eree's findings. If such documents constituted substantial evidence, a petitioner could never obtain a favorable review of an administrative determination, and 42 U.S.C.A. § 405(g) would be meaningless. Thus, as above stated, the Court is convinced that there is no substantial evidence to support the Referee's conclusion with reference to plaintiff's disability.

Insofar as the Referee's conclusion is one of law, it is not in accordance with the statute in question and cannot be sustained.

It is clear that the Referee was of the opinion that plaintiff must have a disability which was not only total but of a permanent nature. In this connection, the record contains the following statements by the Referee:

(page 43) "Q. Doctor, is it or is it not your opinion that Mrs. Bostick is permanently and totally disabled?

\* \* \* \* \*

(page 55) "Q. Of course, he says you have been totally disabled during this period. The law here provides that the disability must be more or less permanent and total to qualify under this law. I'm not arriving at my decision today because I want to study your case very carefully, but the nature of your disability is one which might get worse and it might get better and it might remain as he says.

\* \* \* \* \*

(page 58) "Referee: \* \* \* Now, if you are permanently and totally disabled, and as the law says, if the disability is expected to result in death or is of long-continued and indefinite duration, then you may meet the requirements of the Act.

\* \* \* \* \*

(page 61) "Referee: Of course, the doctor didn't put that in his report. The doctor testified, as you heard, that you were totally disabled, but he didn't say permanently and totally disabled, but he did testify that you were totally disabled."

The Act does not require a disability to be permanent. The Act itself, 42 U.S.C.A. § 416(i)(2)(B), provides that a period of disability shall end when the disability ceases or the person attains the age of 65.

And the Congressional Record demonstrates conclusively that the disability need not be permanent. At page 3730 of Volume 3, U.S.Code Congressional and Administrative News, supra, it is said:

"Disability must have lasted for 6 months before it may be considered. This provision is intended to exclude from consideration temporary conditions which terminate within 6 months.

"In prescribing that the freeze apply only in the case of impairments 'which can be expected to be of long-continued and indefinite duration' your committee seeks to assure that only long-lasting impairments are covered. *This provision is not inconsistent with efforts toward rehabilitation since it refers only to the duration of the impairment and does not require a prediction of continued inability to work.*" (Emphasis added.)

In the instant case the evidence is conclusive that the plaintiff at the time of the hearing, August 13, 1956, was unable to engage in any substantial gainful activity by reason of a medically determinable physical impairment; that said disability had continued for a period of five years; and that the duration of the disability was indeterminate. In view of these facts there could be only one conclusion of law, i. e., plaintiff is entitled to a period of disability under the statute.

Compare the following decisions relating to total and permanent disability within the meaning of War Risk Insurance and National Service Life Insurance: Berry v. U. S., 312 U.S. 450, 61 S.Ct. 637, 85 L.Ed. 945; United States v. Rice, 8 Cir., 72 F.2d 676; United States v. Cornell, 8 Cir., 63 F.2d 180; United States v. Perry, 8 Cir., 55 F.2d 819; Shelley v. U. S., D.C.Ky., 142 F.

Supp. 436; Vandver v. U. S., D.C.Ky., 125 F.Supp. 508, affirmed 6 Cir., 232 F.2d 398; Makowski v. U. S., D.C.Pa., 105 F.Supp. 575; McHam v. U. S., D.C.S.C., 87 F.Supp. 84; Walsh v. U. S., D.C. Minn., 24 F.Supp. 877; Annotation, 147 A.L.R. 1181, 1203 et seq.

The defendant relies strongly upon the regulations of the Secretary of the Department of Health, Education and Welfare, and particularly on 20 C.F.R. Chapter III, Part 404, Subpart "P", 404.1501 (f), approved June 14, 1957, and appearing in Volume 22, Federal Register, No. 119, pages 4362–4363, which provides:

"(f) Under the law, an impairment must also be expected either to continue for a long and indefinite period or to result in death. Indefinite is used in the sense that it cannot reasonably be anticipated that the impairment will, in the foreseeable future, be so diminished as no longer to prevent substantial gainful activity. Thus, for example, an individual who suffers a bone fracture that has prevented him from working for an extended period of time will not be considered under a disability if his recovery can be expected in the foreseeable future."

It might first be noted that this regulation was not in effect at the time of the hearing of the instant case or at the time of the Referee's decision herein. The Court might also state that it has serious reservations as to the validity of this particular regulation since it appears that the regulation requires a permanent disability, or at least comes extremely close to doing so. But, assuming that the regulation is valid, the evidence in the instant case meets the requirements of the regulation. Here the medical evidence was that plaintiff's disability was total and its duration was indeterminate, and there was no substantial evidence to the contrary. The disability had already existed for five years, and the end was not in sight. Certainly plaintiff's disability was and is long continued and of

indefinite duration within the meaning of the Act.

The defendant also relies upon the decision of this Court in Fuller v. Folsom, supra, and the decision of the court in Ussi v. Folsom, D.C.N.Y., 157 F.Supp. 679. However, neither of these decisions support defendant's contentions. In the Fuller case the evidence established that Fuller was unable to continue with the work he was doing as Comptroller and Treasurer of the Encyclopedia Britannica, but the evidence was not sufficient to show that he was unable to do less strenuous work. In fact, his physician advised him "to seek less strenuous employment". In the Ussi case the claimant was actually working and earning $60 a week at the time of the hearing before the Referee. The decisions in the Fuller case and the Ussi case have no application to the case at bar, since the evidence here established without doubt that plaintiff was unable to engage in *any* substantial gainful activity.

In passing, the Court calls attention to the statement in the Congressional Record that the disability freeze provision "is analogous to the 'waiver of premium' commonly used in life insurance and endowment annuity policies * * *". Volume 3, 1954 U.S. Code Congressional and Administrative News, page 3729. The record in the instant case indicates that plaintiff is "now carried for life insurance without payment of premiums" (p. 76 of the record). Of course, that fact would not be at all determinative of the issue involved here, but it is a circumstance at least corroborating the medical evidence in the case.

Thus, as heretofore stated, the Court is convinced that plaintiff sustained her burden of establishing a period of disability under the statute, and that the Referee's conclusion to the contrary was not based upon substantial evidence and was not in accordance with the governing law.

Therefore, an order should be entered denying defendant's motion for summary judgment, and reversing and remanding

the case to the Secretary, Department of Health, Education and Welfare, with directions that plaintiff be granted a period of disability in accordance with the Court's decision herein.