Sherman R. **FULLER**, Plaintiff,

v.

Marion B. **FOLSOM**, Secretary of Health, Education and Welfare, Defendant.

No. 417.

United States District Court
W. D. Arkansas,
Harrison Division.

Oct. 26, 1957.

Robert W. Cummins, Harrison, Ark., for plaintiff.

Charles W. Atkinson, U. S. Atty., Robert E. Johnson, Asst. U. S. Atty., Fort Smith, Ark., for defendant.

JOHN E. MILLER, District Judge.

This is an action brought under 42 U.S.C.A. § 405(g), wherein the plaintiff

seeks a review of an adverse decision of a Referee of the Office of Appeals Council, Social Security Administration, Department of Health, Education and Welfare, the decision of the Referee having been affirmed by the Secretary of Health, Education and Welfare.

In accordance with the statute the Secretary has filed a certified copy of the transcript of the record, including the evidence upon which the findings and decision complained of are based.

The jurisdictional statute, among other things, provides:

"* * * The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive * * *."

■ The burden of proof, both before the Referee and in the instant proceeding, is upon the plaintiff. Thurston v. Hobby, D.C.Mo., 133 F.Supp. 205; Norment v. Hobby, D.C.Ala., 124 F.Supp. 489. Not only are the findings of fact made by the Referee, if supported by substantial evidence, conclusive, but a majority of courts also extend the finality of the Referee's findings to inferences and conclusions which he draws from the evidence, if there is a substantial basis for the conclusions. Rosewall v. Folsom, 7 Cir., 239 F.2d 724; United States v. LaLone, 9 Cir., 152 F.2d 43; Social Security Board v. Warren, 8 Cir., 142 F.2d 974; Walker v. Altmeyer, 2 Cir., 137 F.2d 531; McGrew v. Hobby, D.C. Kan., 129 F.Supp. 627; Hemmerle v. Hobby, D.C.N.J., 114 F.Supp. 16; Schmidt v. Ewing, D.C.Pa., 108 F.Supp. 505; Holland v. Altmeyer, D.C.Minn., 60 F.Supp. 954.

■ The Referee's conclusions of law, however, are not binding upon the Court, although they are entitled to great weight. See, Miller v. Burger, 9 Cir.,

161 F.2d 992; Carroll v. Social Security Board, 7 Cir., 128 F.2d 876; Ayers v. Hobby, D.C.Va., 123 F.Supp. 115; Ray v. Social Security Board, D.C.Ala., 73 F.Supp. 58.

■ And in reviewing the decision of the Referee, the Court must not abdicate its conventional judicial function. Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 490, 71 S.Ct. 456, 466, 99 L.Ed. 456; Shields v. Folsom, D.C.Pa., 153 F.Supp. 733, 734.

■ With these general rules of law in mind, the Court must consider the record in the instant case. On November 23, 1955, plaintiff filed an application under 42 U.S.C.A. § 416(i), seeking to establish a period of disability from May 1, 1946, and continuously thereafter up to and including the date of the application.

While that application was pending, on February 15, 1956, plaintiff filed an application for old-age insurance benefits payable under 42 U.S.C.A. § 402(a). His wife also filed application under 42 U.S.C.A. § 402(b) for "wife's insurance benefits" based on her husband's wage record. Plaintiff and his wife were awarded benefits, but the question of any possible period of disability was left open for determination.

On July 16, 1956, plaintiff was notified that his application for the establishment of a period of disability had been denied, and that his benefit rate would remain unchanged. Plaintiff requested a hearing before a Referee, and such hearing was held at Harrison, Arkansas, on March 19, 1957. Plaintiff was represented by counsel at the hearing.

The Referee issued his decision on April 15, 1957, holding that plaintiff was not entitled to a period of disability under 42 U.S.C.A. § 416(i). The Referee's decision was approved by the Appeals Council on June 11, 1957.

The question before this Court is whether there is substantial evidence in the record to support the Referee's findings.

The statute in question, 42 U.S.C.A. § 416(i), among other things, provides:

"(i) (1) Except for purposes of sections 402(d), 423 and 425 of this title, the term 'disability' means (A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration, * * *. An individual shall not be considered to be under a disability unless he furnishes such proof of the existence thereof as may be required. * * *

"(2) The term 'period of disability' means a continuous period of not less than six full calendar months (beginning and ending as hereinafter provided in this subsection) during which an individual was under a disability (as defined in paragraph (1) of this subsection). No such period shall begin as to any individual unless such individual, while under a disability, files an application for a disability determination with respect to such period; and no such period shall begin as to any individual after such individual attains the age of sixty-five. * * *"

Plaintiff makes no attack upon the findings of fact of the Referee, and since the Court is convinced that the Referee's findings of fact are supported by substantial evidence, the Court is adopting the Referee's findings of fact as those of the Court. The pertinent findings of fact of the Referee are as follows:

"The record discloses that the claimant was born on February 12, 1891. He filed application for old-age insurance benefits on February 15, 1956 under section 202(a) of the Social Security Act, as amended. His wife, Myrtle A. Fuller, who was born November 2, 1890, filed application for wife's insurance benefits under section 202(b) on that same date. On March 15, 1956 the claimant was awarded old-age insurance benefits of $81.10 per month and his wife was awarded wife's insurance benefits of $40.60 per month, both awards effective with the month of February 1956.

"In his disability application which he filed, the claimant stated that his education includes two years of college, that he had been employed as comptroller and treasurer for a publishing company, and that he first became unable to engage in substantial work at the age of 57 because of hypertension with the result that he cannot stand exertion of any kind because of shortness of breath. He further states that he was advised to quit work by his family doctor and that his present activities are limited to work around the house. His employer continued his salary for one year after he became disabled.

"The wage record shows continuous and substantial postings from the first quarter of 1939 through the last quarter of 1947; therefore, earnings requirements for disability purposes were met. He last met these requirements in the quarter ending September 30, 1949.

"A medical report submitted shows the claimant was treated in 1949 [typographical error—should be 1945] for a malignant hypertension with blood pressure of 240/110. All other tests were negative but the hypertension persisted in spite of therapy at that time. The doctor adds that he advised the claimant to seek less strenuous employment. Reports from Dr. Owens show that he had attended the claimant for colds, etc., from 1946 to 1955. On November 18, 1955, he found the blood pressure to be 210/100. On December 5, 1955, a recheck showed the blood pressure to be 190/100. There was light pain in the parachordal [pericardial] area and he noted that he was very short of breath if he exerted himself to any extent. Examination has also shown

slight cardiac enlargement and the doctor adds that the heart condition was not mentioned on the previous report and the enlargement was not excessive but it could be found on close examination. * * *

"Before the referee the claimant testified substantially as follows. He first began work with Montgomery Ward and Company, then worked for Sears Roebuck in Chicago beginning from July 7, 1913. In 1920 Sears opened a store in Philadelphia and he was transferred there as credit manager. About February 1935 he transferred back to Chicago as manager of Sears mortgage loan department. About August 15, 1939 he was made comptroller of a subsidiary (Encyclopedia Britannica) until 1943 when Sears gave this business to the University of Chicago. Claimant was retained by the University as comptroller and made treasurer of the company. He continued in such capacity until his retirement on May 1, 1946.

"The claimant further testified that he began suffering from disability in the spring of 1944 when he began getting rather severe headaches and finally had a checkup by the company's firm of doctors. His blood pressure was 240/150, dangerously high at that time. He then discussed his condition with the company president who suggested that he take a leave of absence. About July 1, 1944 the claimant began two months leave of absence, at which time he went to Hot Springs, Arkansas to take a series of baths to relieve tension and probably bring his blood pressure down. Thereafter, he began feeling pretty good. He returned to his home in Chicago and stayed at home for a while, and then returned to work feeling somewhat improved. He continued working until the spring of 1945 when he again felt bad and returned to a physician who gave him some blood pressure pills. In the spring of 1946 he began feeling really uncomfortable again and was suffering from bad headaches, but his health was fairly good otherwise. Claimant's family doctor returned from the war and the claimant went to see him about March 1, 1946. This physician recommended that the claimant retire and said he might not live to draw his full retirement from the firm when he attained age 65 unless he retired earlier. The physician further advised the claimant that if he would retire and take it easy he could probably live out his normal life expectancy. On May 1, 1946 the claimant was retired on disability.

"The claimant further testified that at the time of his retirement he had no insurance in force with a permanent and total disability clause. He moved to Harrison, Arkansas about the middle of November 1946 because he could not afford to live in Chicago on his reduced income. He bought a small home in Harrison and he and his wife live there. The claimant has not been hospitalized for his condition, which has improved some since he quit work. He continued to feel fairly good until sometime in 1956 [possibly the latter part of 1955] when his blood pressure began rising again, for which condition he takes medicine regularly. He believes he is physically unable to do any kind of light work, clerical or otherwise, and quit for this reason. For the same reason he has not tried to get employment or engage in any substantial gainful activity since moving to Arkansas. He could not have obtained employment of a different nature which would have been in keeping with the doctor's advice and which would have furnished the standard of living to which claimant had become accustomed while living in Chicago. At that time it cost him about $500 to $600 per month to maintain himself, his wife

and children. On retirement the claimant was receiving an annual salary of $10,000 plus $5,000 bonus. Since retirement he receives $36.54 per month from the company's insurance plan, in effect only three years before the claimant quit, payable beginning at age 65. The claimant also has considerable Sears Roebuck stock, the dividends from which have been his chief source of income since retirement and until age 65. He and his wife had also received social security benefits in amounts heretofore stated since February 1956. He has not been consulted by a vocational counselor but it is clear that he is well qualified in a number of lines of endeavor in which he could engage if his physical condition permitted. The claimant has consulted two different physicians at various intervals for checkups since terminating his employment."

As above stated, the plaintiff apparently has no quarrel with the Referee's findings of fact, but plaintiff does contend that the inferences drawn therefrom and the Referee's conclusions of law are erroneous. The Referee, after setting out the issues, the pertinent statutes, and the above-quoted findings of fact, made the following additional findings of fact and conclusions of law:

"The referee has given careful consideration to the entire evidence under the applicable law. Medical reports submitted show the presence of rather severe hypertension in 1945 for which the claimant received treatment during that year. Dr. Owens, who is presently in attendance, states he had treated claimant for colds, etc. from 1946 to 1955 and late in 1955 there was slight cardiac enlargement, and his blood pressure remained elevated as of that time. Although the unpleasant symptoms related to hypertension may have made it advisable for the claimant to discontinue his usual work as comptroller and treasurer of the large corporation with its attendant pressures and responsibilities, from physical and clinical findings it is not shown that his over-all ability was so severely impaired as to render him unable to do any type of substantial gainful work commensurate with his educational attainments, his training, and experience. While a slight cardiac enlargement was shown by examination in late 1955, the evidence does not show persistent diastolic pressure of 110 or greater, complicated with renal failure, hypertensive retinopathy, or congestive heart failure, existing for a period prior to September 30, 1949 when he last met the earnings requirement for a period of disability under the applicable provisions of the Act.

"In the light of the foregoing considerations, it is the finding of the referee that the evidence is insufficient to establish the existence of impairments to a degree of severity as would continuously prevent the claimant from engaging in any type of substantial gainful activity beginning May 1, 1946 and prior to September 30, 1949 when he last met the earnings requirements and continuing without interruption until November 23, 1955.

"It is the decision of the referee that the claimant is not entitled to a period of disability under section 216(i) of the Social Security Act, as amended, for the reasons heretofore stated."

It is the contention of the plaintiff that on and after March 1, 1946, he was unable to engage in any substantial gainful activity without peril to his life and health.

To the contrary, defendant contends that the evidence was insufficient to establish such a disability on the part of the plaintiff.

The disability freeze provisions were enacted in 1954, and strange as it may seem there have been no generally reported decisions construing the statute.

It appears that the only decisions relating to the statute are memorandum decisions reported in looseleaf services. However, the Congressional Record sheds some light on the intent and purpose of the disability provisions. Senate Report 1987, July 27, 1954; House Report No. 1698, May 28, 1954; and Conference Report No. 2679, August 20, 1954, may be found in Volume 3 U.S.Code Congressional and Administrative News, 1954, page 3710 et seq. At page 3730 it is said:

"Only those individuals who are totally disabled by illness, injury, or other physical or mental impairment which can be expected to be of long-continued and indefinite duration may qualify for the freeze. The impairment must be medically determinable and preclude the individual from performing any substantial gainful work. An individual would also be disabled, by definition, if he is blind within the meaning of that term as used in the bill. A person who does not meet the statutory definition but who nevertheless has a severe visual impairment would be in the same position as all other disabled persons, that is, he may qualify for a period of disability under the general definition of disability if he is unable to engage in any substantial gainful activity by reason of his impairment.

"There are two aspects of disability evaluation: (1) There must be a medically determinable impairment of serious proportions which is expected to be of long-continued and indefinite duration or to result in death, and (2) there must be a present inability to engage in substantial gainful work by reason of such impairment (recognizing, of course, that efforts toward rehabilitation will not be considered to interrupt a period of disability until the restoration of the individual to gainful activity is an accomplished fact). The physical or mental impairment must be of a nature and degree of severity sufficient to justify its consideration as the cause of failure to obtain any substantial gainful work. Standards for evaluating the severity of disabling conditions will be worked out in consultation with the State agencies. They will reflect the requirement that the individual be disabled not only for his usual work but also for any type of substantial gainful activity.

"Disability must have lasted for 6 months before it may be considered. This provision is intended to exclude from consideration temporary conditions which terminate within 6 months.

"In prescribing that the freeze apply only in the case of impairments 'which can be expected to be of long-continued and indefinite duration' your committee seeks to assure that only long-lasting impairments are covered. This provision is not inconsistent with efforts toward rehabilitation since it refers only to the duration of the impairment and does not require a prediction of continued inability to work. An individual would not meet the definition of 'disability' if he can, by reasonable effort and with safety to himself, achieve recovery or substantial reduction of the symptoms of his condition."

The purpose of the disability freeze provisions is to prevent the impairment or complete loss of old-age and survivors insurance rights of workers who have periods of total disability before reaching retirement age. For a more complete statement of the need for the disability freeze, see Volume 3 U.S.Code Congressional and Administrative News, supra, at page 3729.

A consideration of the entire record convinces the Court that the Referee's findings of fact are supported by substantial evidence and that the Referee's conclusions of law are correct. It must be remembered that the burden of proof was on the plaintiff to establish his alleged disability period. Plaintiff did es-

**354**

tablish that he retired from his employment as comptroller and treasurer of the Encyclopedia Britannica upon the advice of his physician. But there is no substantial evidence in the record to indicate that plaintiff was unable to engage in "any substantial gainful activity".

In his employment with the Encyclopedia Britannica he had supervision of 100 to 150 persons, and according to his testimony, the company was "kinda' a high pressure company" (p. 23 of the record). The fact that plaintiff's hypertension did prevent him from safely carrying out his duties as comptroller and treasurer of the Encyclopedia Britannica does not establish that he would be unable to engage in *any* gainful activity.

It is true that plaintiff testified that in his opinion he was not able to engage in any kind of work. But there was no substantial medical evidence to substantiate plaintiff's opinion. The medical report of Dr. Samuel K. Lewis indicates that in 1945 he diagnosed plaintiff's condition as "malignant hypertension". With regard to clinical findings he stated "All other tests were negative at that time, but the hypertension persisted in spite of therapy known at that time". Under "Remarks", Dr. Lewis stated: "This man was not doing the job he was on because of the hypertension and I advised him to seek less strenuous employment". In answer to a query as to the date of the plaintiff's last medical examination, Dr. Lewis stated "1945".

The only other medical evidence was the medical report of Dr. D. L. Owens, and that report indicates that Dr. Owens only treated plaintiff for colds, etc., from 1946 until the latter part of 1955.

In view of the absence of any substantial medical evidence to support plaintiff's contentions, the Court is of the opinion that the Referee was correct in concluding that the evidence was insufficient to establish a period of disability within the meaning of 42 U.S.C.A. § 416(i).

In passing, the Court might say that if the question presented were whether the plaintiff was disabled from performing his work as comptroller and treasurer of the Encyclopedia Britannica, or work of a similar nature or character, plaintiff's contentions might be well founded. But under the plain language of the statute, to establish a period of disability the plaintiff must show a medically determinable physical or mental condition which makes him unable to engage in any substantial gainful activity. The evidence of the plaintiff falls short in this regard, and, as above stated, the conclusions of the Referee are correct.

Therefore, an order should be entered affirming the decision of the Referee and dismissing plaintiff's petition for review.