Albert J. **WRAY**, Plaintiff,

v.

Marion B. **FOLSOM**, Secretary of Health, Education and Welfare, United States of America, Defendant.

No. 1437.

United States District Court
W. D. Arkansas,
Fort Smith Division.

Oct. 15, 1958.

Hardin, Barton, Hardin & Garner, Kimbrough & Westmoreland, Ft. Smith, Ark., for plaintiff.

Chas. W. Atkinson, U. S. Atty., Robert E. Johnson, Asst. U. S. Atty., Ft. Smith, Ark., for defendant.

JOHN E. MILLER, District Judge.

The plaintiff sought by proper administrative procedures to establish a "period of disability" under the Social Security Act, Title 42 U.S.C.A. § 416. Upon an adverse final decision of the Secretary of Health, Education and Welfare, he filed this action to review the Secretary's decision under the authority of Title 42 U.S.C.A. § 405(g). The defendant duly answered, attaching to his answer a certified copy of the transcript of the administrative record, including all exhibits, the testimony before the Referee, and the written decision of the Referee, which became the final decision of the Secretary.

The plaintiff's complaint seeks to reverse the Secretary's decision, but after filing the complaint the plaintiff moved to remand the case for the sole purpose of admitting additional evidence, and the question before the court at this time is whether such a remand is justified under all the circumstances of this case.

The governing section is Title 42 U.S. C.A. § 405(g), which provides:

"The court shall have power to enter, upon the pleadings and tran-

script of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied by the Secretary or a decision is rendered under subsection (b) of this section which is adverse to an individual who was a party to the hearing before the Secretary, because of failure of the claimant or such individual to submit proof in conformity with any regulation prescribed under subsection (a) of this section, the court shall review only the question of conformity with such regulations and the validity of such regulations. The court shall, on motion of the Secretary made before it files its answer, remand the case to the Secretary for further action by the Secretary, and may, at any time, on good cause shown, order additional evidence to be taken before the Secretary, and the Secretary shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm its findings of fact or its decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and a transcript of the additional record and testimony upon which its action in modifying or affirming was based. Such additional or modified findings of fact and decision shall be reviewable only to the extent provided for review of the original findings of fact and decision. The judgment of the court shall be final except that it shall be subject to review in the same manner as a judgment in other civil actions."

Thus the question to be determined is whether there is "good cause" to order additional evidence to be taken.

This case originated approximately three years ago when the plaintiff filed his undated application to establish a period of disability sometime in October or November of 1955. Following this application, a report of Dr. W. H. Bollinger of Charleston, Arkansas, dated December 7, 1955, was filed. No further action was taken until October 22, 1956, when the Bureau of Old Age and Survivors Insurance denied the period of disability. The plaintiff sought a reconsideration, and on December 19, 1956, the Bureau again denied his application.

The plaintiff requested a hearing before a Referee on December 26, 1956, and that hearing was held on November 21, 1957. Additional medical reports were filed by Dr. Bollinger and by Dr. Hal Dildy of Little Rock, Arkansas.

Prior to his impairment, the plaintiff was a truck driver. The undisputed evidence showed that for some months prior to his acute disability he had experienced some trouble, and on October 1, 1955, while performing his work, he suddenly became almost blind, dizzy and unable to stand, that sweat popped out on his face, and he was unable to make the "run" which he had been about to start. He went to Dr. Bollinger, who found a carbuncle "all over the back" of his head. He visited Dr. Bollinger twice each day for two weeks. Dr. Bollinger diagnosed diabetes, hypertension and overweight. No doctor examined him to determine the nature of his obesity or whether it was due to glandular trouble, but after going on a diet the plaintiff lost 117 pounds. Dr. Bollinger prescribed insulin in treating the diabetes. The plaintiff testified that "it all but knocks me out." (Tr. 26). The insulin does not produce convulsions or coma, but he does react with intense perspiration, headache, and extreme lassitude. He takes insulin daily, and the same reaction results each day. It also produces nausea and extreme weakness. He testified that he could walk a mile on occasion without rest and could cut grass in his yard a few minutes at a time.

The plaintiff's testimony was corroborated by his wife, his employer, and one J. C. Womack, who testified that the

plaintiff was not able to hunt and fish as he had done previously.

█ The medical evidence consisted of reports of Dr. Bollinger, a report of Dr. Dildy dated May 8, 1957, and a Revised Disability Determination made by persons in the Bureau. The Revised Disability Determination is based upon the medical reports of Dr. Bollinger and after reviewing those reports states:

"* * * the applicant may have some disability, but the medical evidence fails to present *ample* support of an impairment that will be of long continued and indefinite duration." (Emphasis added.)

The same report concludes:

"*Decision*: Based on all the facts, the applicant is found not disabled, therefore, the claim is denied."

Aside from the fact that the determination by the Bureau in this report is based on an erroneous requirement of "ample" evidence of impairment, it cannot be considered as substantial evidence because it was not based on actual examination of the plaintiff or even a "consultive" examination, as was Dr. Dildy's. See Bostick v. Folsom, D.C. W.D.Ark.1957, 157 F.Supp. 108, 117–118.

Dr. Bollinger's reports indicated that the plaintiff was unable to work and that no improvement could be expected. He confirmed the diagnosis of diabetes and hypertension since October 1, 1955. His report dated January 1, 1958, also diagnoses arthritis, respiratory difficulties, and a heart condition.

Dr. Dildy's report, dated May 15, 1958, concurred in these diagnoses and indicated a further diagnosis of obesity. He concluded:

"He shows poor control of diabetes. At present his diabetes could be considered severe but could be improved with additional loss of weight. He needs to follow a diet more closely and to continue loss of weight. I think his hypertension is related to obesity and not related to a renal eitology. He shows hyper-

tension on physical examination and left axis deviation by EKG without evidence of enlargement of the heart shadow. He has had no treatment other than weight loss for the hypertension." (Tr. 52)

Dr. Dildy indicated that he expected "optimum improvement" within six months.

Thus it will be seen that the only evidence in the record indicates a severe disability at the time of the hearing. Under this state of the evidence, the Referee concluded:

"In consideration of all the evidence in this case the referee finds that although the claimant has diabetes and a moderate heart condition and that both conditions are complicated by obesity, the fact that the claimant is showing a fair response to treatment for his diabetic condition and the functional capacity of Class II requires only a slight limitation, it cannot be said that his overall ability has been so severely affected that he is continuously unable to engage in some type of gainful activity. While it is true that he may not be able to return to his former job, it is apparent that *he may, in the foreseeable future,* be able to return to some type of gainful work. He is presently able to do some work involving moderate exertion and can walk some distance without serious difficulty. It accordingly appears that it may be reasonably expected that by following the prescribed diet, and by further reduction of weight, he could secure better control of his condition which will result in an increased capacity which will result in an ability to pursue gainful employment involving a lesser degree of exertion than that required as a truck driver." (Tr. 8)

The Referee's conclusion was not based upon a finding that the plaintiff had no impairment or that the impairment was not sufficient to prevent him from engaging in substantial activity.

On the contrary, the Referee's finding was that the plaintiff's present impairment would not be of indefinite duration as required by the statute, and a period of disability was denied on that ground. The Social Security Act, Title 42 U.S.C.A. § 416(i), provides in that respect:

"* * * the term 'disability' means (A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration * * *."

The Referee based his decision on the latter requirement of an impairment of indefinite duration. He felt that the plaintiff "may, in the foreseeable future, be able to return to some type of gainful work." This conclusion is based upon the "consultive examination" of Dr. Dildy and Dr. Dildy's opinion that the plaintiff would improve within six months, in an unspecified degree, with additional loss of weight.

The medical evidence which the plaintiff wishes to introduce into the record upon remand consists of reports from Drs. Charles T. Chamberlain, E. A. Mendelsohn and Carl L. Wilson, all of the Holt-Krock Clinic at Fort Smith, Arkansas. These reports appear to be considerably more thorough than any reports furnished in the record as it now stands. They likewise tend to contradict the findings of Dr. Dildy. The letter of Dr. Charles T. Chamberlain which accompanies these reports is dated June 12, 1958, more than a year after Dr. Dildy's prognosis of an improvement within six months. Dr. Chamberlain states:

"You will find enclosed herewith a complete summary of our history, physical and laboratory findings, on the basis of which we have arrived at the following diagnoses: Diabetes mellitus, obesity, arteriosclerosis with hypertension, hypertensive and arteriosclerotic heart disease, angina pectoris.

"In my opinion, this patient is totally and permanently disabled from performing any gainful occupation for which he has been trained, namely, heavy manual labor."

Considering all of the facts, the inferences and conclusions drawn by the Referee, and the evidence which the plaintiff seeks to offer should the case be remanded, has the plaintiff shown good cause for such a remand?

The mere fact that the plaintiff was not represented by an attorney in the administrative hearing is not of itself sufficient to justify admitting new evidence now, and is entitled to only slight weight. A plaintiff in a hearing to establish a period of disability has the burden of proof, Fuller v. Folsom, D.C.W.D.Ark.1957, 155 F.Supp. 348; Bostick v. Folsom, D.C.W.D.Ark.1957, 157 F.Supp. 108, and cases cited; and is, of course, chargeable with his failure to meet that burden whether he is represented by counsel or not. On the other hand, "good cause" is a relative and highly abstract term, and its meaning must be determined not only by the verbal context of the statute in which the term is employed, but also by the context of the action and procedures involved and the type of case presented. In this respect it should be remembered that while administrative determinations have, as they must, a weighty effect with a reviewing court, and the conclusions of a Referee must be accepted if based upon substantial evidence, the administrative hearing in this type of action is informal and nonadversary, and the determinations of an administrative body should not be given the stringent protection against new evidence and re-evaluation afforded to final judgments of courts of record. If new evidence were to be presented, none of the cumbersome and time-consuming requirements found in jury trials are imposed upon the administrative body. This is particularly so where the evidence sought to be introduced is written. It should also be re-

membered that the defendant would not be prejudiced if new evidence were to be required. In the administrative hearing, as distinguished from the cause in this court, there are no formal adversaries, and no new preparation by any party will be required. As the court said in Schroeder v. Hobby, 10 Cir., 1955, 222 F.2d 713, at page 715:

"The Social Security Act is to be liberally construed as an aid to the achievement of its Congressional purposes and objectives. Narrow technicalities which proscribe or thwart its policies and purposes are not to be adopted."

In these circumstances, courts must not require such a technical and cogent showing of good cause as would justify the vacation of a judgment or the granting of a new trial, where no party will be prejudiced by the acceptance of additional evidence and the evidence offered bears directly and substantially on the matter in dispute.

The plaintiff's "good cause" for offering additional evidence here can readily be found. Apparently all competent medical reports agree that the plaintiff was at the time of examination disabled to such an extent that he was unable to engage in substantial gainful activity, and the Referee's decision seems to so conclude. The sole basis for the decision adverse to the plaintiff was the Referee's conclusion that the plaintiff "may" improve in the "foreseeable future." This in turn is based upon a prediction of Dr. Dildy that improvement could be expected within six months. But it will be noted that Dr. Dildy did not attempt to specify what degree of improvement could be expected; nor did he indicate that the plaintiff could feasibly lose further weight. Neither did this doctor attempt to estimate how much more activity, if any, the plaintiff could be expected to engage in after the loss of weight. Yet the Referee, in order to find a reasonable expectation that the plaintiff would be able to engage in substantial activity, had to assume answers to these questions. He had to infer from a bare prognosis of improvement, that the improvement would be so marked that the plaintiff could engage in substantial activity. He likewise had to assume that the improvement was not only possible but likely. Nowhere in the report of Dr. Dildy's "consultive examination" is there any suggestion to justify such inferences. It is thus apparent that the Referee's inference that the plaintiff would improve so greatly as to be able to do substantial work is, at the very best, highly speculative. It may have been based upon a wide statistical experience of the Referee, but it could not have been based upon the record in this case.

The Supreme Court in Mobile, J. & K. C. R. Co. v. Turnipseed, 1910, 219 U. S. 35, at page 43, 31 S.Ct. 136, at page 138, 55 L.Ed. 78, said:

"That a legislative presumption of one fact from evidence of another may not constitute a denial of equal protection of the law, it is only essential that there shall be some rational connection between the fact proved and the ultimate fact presumed, and that the inference of one fact from proof of another shall not be so unreasonable as to be a purely arbitrary mandate. So, also, it must not, under guise of regulating the presentation of evidence, operate to preclude the party from the right to present his defense to the main fact thus presumed."

See also Western & A. R. A. v. Henderson, 1929, 279 U.S. 639, 49 S.Ct. 445, 73 L.Ed. 884.

■■ A judicial or quasi-judicial inference is no less bound to demonstrate some "rational connection between the fact proved and the ultimate fact presumed," than a "legislative presumption," and the rule applies no less to judicial or quasi-judicial hearings within the federal system than to the state courts. The inferences of a Referee are given the same weight as the facts which he finds, but there must be a substantial basis for such inferences and they must be reasonable and logical in their progress from proven fact to ultimate conclu-

sion. See, Fuller v. Folsom, D.C.W.D. Ark.1957, 155 F.Supp. 348, 349, and cases cited.

█ It is not necessary here to determine whether the Referee's inference is so speculative that it has no rational connection with the proven fact from which the inference was drawn, because the plaintiff now asks only to remand his case in order to introduce additional evidence. What can be said here, however, is that the inference drawn by the Referee is so speculative that a diligent plaintiff, whether represented by an attorney or not, could not be expected to anticipate it.

This is particularly true here because the determination made by the Bureau in its Revised Disability Determination was that the plaintiff was not at all disabled, whereas the Referee's decision, on the other hand, was based upon the entirely different theory that the plaintiff would, in the "foreseeable future," recover sufficiently to engage in substantial activity. This unexpected conclusion is such a highly conjectural inference from such scant evidence that the plaintiff cannot be limited to his original proof, which went primarily to the question of his present disablement. The plaintiff is not to be precluded from defending himself from the force of an inference not supported by the evidence.

The reports which the plaintiff seeks to introduce find significance in the fact that they are apparently based on more thorough examinations than those which he has previously had, and the reports themselves are considerably more comprehensive. They not only substantiate a present inability on the part of the plaintiff to engage in substantial activity, which seems undisputed, but they also go directly to the question of whether, as the Referee speculated, the plaintiff will improve in the "foreseeable future" to such a degree that his present inability will be removed. This is particularly true now, because although the improvement period allowed by Dr. Dildy has expired, the plaintiff's physicians continue to find him totally disabled.

The court is convinced that under these circumstances the plaintiff has made a strong showing of good cause for a remand, and that the case should be remanded to the Secretary or his delegate for the purpose of admitting new evidence and rendering a decision based upon the entire record. The court will retain jurisdiction and upon a final decision of the Secretary, the defendant will file transcripts of the additional proceedings had upon remand. After the transcript is filed, the plaintiff may amend his complaint accordingly or dismiss as he may see fit. However, these proceedings have no effect upon any right of the plaintiff to obtain "disability benefits" which he prays in his complaint. The record is made solely on a claim for a "period of disability", and none of the proceedings were based upon any claim for the cash benefits under Title 42 U.S.C.A. § 423.

An order should be entered remanding this case to the Secretary of Health, Education and Welfare for the receipt of the reports of Drs. Chamberlain, Mendelsohn and Wilson, together with any other evidence the Secretary may wish to receive, in accordance with this opinion.