Olin B. HALLARD, Plaintiff,

v.

Arthur FLEMING, Secretary of Health, Education and Welfare, United States of America, Defendant.

Civ. A. No. 1428.

United States District Court
W. D. Arkansas,
Fort Smith Division.

Nov. 6, 1958.

206

J. Sam Wood, Fort Smith, Ark., for plaintiff.

Charles W. Atkinson, U. S. Atty., Robert E. Johnson, Asst. U. S. Atty., Fort Smith, Ark., for defendant.

JOHN E. MILLER, Chief Judge.

This is an action under Title 42 U.S.C.A. § 405(g), to review a final adverse decision of the Secretary of Health, Education and Welfare on the plaintiff's claim for a period of disability under the Social Security Act. The plaintiff claims that he was disabled within the meaning of Title 42 U.S.C.A. § 416(i), which provides:

"* * * the term 'disability' means (A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration * * *."

A period of disability is defined as a period of not less than six months during which the claimant was under a "disability" as defined above.

A hearing before a Referee was held on November 20, 1957, and in a written opinion dated January 17, 1958, the Referee held that the plaintiff was not so severely disabled as to qualify him for a disability freeze under the act, and further that his difficulties could be expected to terminate or lessen with proper therapy and that they would not be of long-continued and indefinite duration. This decision became the final decision of the Secretary on April 16, 1958, and on May 20, 1958, the plaintiff filed his complaint against Marion B. Folsom, then the Secretary, to reverse that decision. On November 4, 1958, Arthur Fleming, now Secretary of Health, Education and Welfare, was substituted as defendant by agreement of the parties.

The burden of proof is upon the plaintiff, and both the factual findings and the inferences drawn from the findings of the Referee must be accepted if there is any substantial evidence to support them. Fuller v. Folsom, D.C.Ark. 1957, 155 F.Supp. 348; Bostick v. Folsom, D.C.Ark.1957, 157 F.Supp. 108. The Referee's conclusions of law, of course, are only persuasive, Fuller v. Folsom, supra, and his ultimate conclusions of fact or inferences drawn from the facts must have a rational connection with those facts. Wray v. Folsom, D.C. W.D.Ark.1958, 166 F.Supp. 390; Boyd v. Folsom, 3 Cir., 1958, 257 F.2d 778.

The plaintiff's difficulties began in March 1950, when he suffered what is described as a "cerebral accident," or stroke. Prior to this time he had held a responsible job for many years as a wholesale salesman with the Berry Dry Goods Company of Fort Smith, Arkansas. His formal education was limited to the sixth grade, but just previous to his stroke he was earning from $12,000 to $16,000 a year in commissions.

Following his stroke the plaintiff was attended by Dr. L. A. Whittaker and Dr. J. E. Stevenson, and was sent by Dr. Stevenson to Dr. Pat Murphy of Little Rock. Dr. Murphy's report of April 1950 substantiated the finding of a stroke and added:

"I have examined this man and find his neurological picture as described above, but I think he shows some improvement in that he feels pin prick lower down on his arm than the first day I examined him. I am not able to prove that this patient has a brain tumor nor has he had a vascular lesion, nor does he have a spinal cord disease or a peripheral nerve disease of an organic nature. The general picture as I see it now looks like we are dealing with a case of hysteria. The blood pressure is normal, urinalysis is normal. X-ray of chest shows some signs of bronchitis." (Tr. 83)

The plaintiff visited numerous physicians. His family physician in a report dated July 4, 1955, confirmed Dr. Murphy's diagnosis of hysteria and concluded that the plaintiff was "nervous physically, but mentally clear. Not able to follow his vocation as traveling salesman." The plaintiff visited Hot Springs, Arkansas, to take thermal baths in 1952, and at that time was seen by physicians at the Wade Clinic there. The Wade Clinic report of November 12, 1957, shows that in 1952 the plaintiff had only "about 25% sensation in right side of body and equilibrium has been bad. Urine has continued to show pus * * *. His chief complaint was weak spells."

Since 1954 the plaintiff was regularly attended by Dr. Ralph Kramer of Fort Smith, Arkansas. Dr. Kramer's report of November 18, 1957, summarizing his findings over that period, states:

"He suffers from arteriosclerotic hypertensive heart disease with blood pressure being 260/120, on occasions. He has frequent complaints of dizziness and unable to swallow any large object. He has episodes of nervous attacks, becomes very weak and trembly and is afraid to be out of bed at that time. He has a recurrent infection of the prostate which has been treated by

Dr. Downs, Cooper Clinic and also by Wade Clinic in Hot Springs. He has pain in both shoulders and states that it is from a cervical disc for which he was treated several years ago. He has been under treatment with Reserpoid, etc., for the past eight or nine months. His blood pressure is under control as long as his activity is limited.

"We have recommended to this patient that he do no work because of his anxiety state and his hypertension. We feel that he is totally disabled from performing any gainful operation at the present time." (Tr. 99)

Dr. Ralph A. Downs of the Cooper Clinic at Fort Smith reported in a letter of November 29, 1957, that prostatic surgery might be called for in the future, but stated that it would be delayed until definite evidence of necessity was found because of the plaintiff's general health.

The plaintiff also visited Dr. Charles S. Lane, Jr., of Fort Smith, a specialist in otolaryngology, on April 5, 1957. Dr. Lane found the pharynx and larynx completely normal except for a complete paralysis of the left true vocal cord. The right vocal cord appeared normal. This impairment seems to trouble the plaintiff in swallowing, but does not affect his ability to speak.

Apparently at the request of the Arkansas Vocational Rehabilitation Service, the plaintiff was seen by Dr. Charles T. Chamberlain of the Holt-Krock Clinic at Fort Smith in February of 1957. After setting forth his findings thoroughly, Dr. Chamberlain concluded:

"Diagnoses, on the basis of physical findings and the authorized laboratory studies, are arteriosclerosis with hypertension, arteriosclerotic and hypertensive heart disease with cardiac enlargement; prostatism with superimposed urinary tract infection; pulmonary emphysema; and anxiety state, possibly secondary in part to menopausal syndrome.

\*　　\*　　\*　　\*　　\*　　\*

"It is my impression that this patient's activities should be limited to sedentary work because of his hypertension and his anxiety state. I consider him totally disabled for performing any sustained gainful occupation at this time." (Tr. 92–93)

The plaintiff's testimony before the Referee shows that his chief problem at the time of the hearing relates to dizzy spells or loss of equilibrium, and weakness and nervousness. He apparently moves around freely though on a limited scale, and does not do much, if any, work around the house. The plaintiff's wife testified that he did not read much and that his eyes were "bad." The plaintiff did not show any attempt to work either at home or elsewhere, either on a full-or part-time basis.

Under this state of the evidence the Referee was justified in his conclusion that the plaintiff's impairments were not sufficient to establish a period of disability. It may be that the Referee's conclusion that the plaintiff's disability would lessen with proper therapy is speculative, since there is no direct evidence to this effect in recent reports. However, the Referee also concluded that the plaintiff's present condition was not sufficiently severe to prevent him from engaging in any substantial gainful activity, and this conclusion has substantial support in the evidence. It is true that Dr. Kramer recommended that the patient do no work and that, in his opinion, the plaintiff "is totally disabled from performing any gainful operation [sic] at the present time." But Dr. Chamberlain, on the other hand, recommended only that the plaintiff's work be "sedentary." The plaintiff urges that this recommendation by Dr. Chamberlain is nullified by his further conclusion that the plaintiff was "totally disabled for performing any sustained gainful occupation at this time." But the occupation need not be "sustained"; it must only be substantial in the amount of time or effort put forth in pursuit of that occupation. A sedentary occupation such

as recommended by Dr. Chamberlain could certainly be "substantial." It might very well be pursued in the plaintiff's own home for a few hours a day. The Referee evidently accepted Dr. Chamberlain's opinion that a sedentary occupation was possible. He was entitled to accept that opinion, although Dr. Kramer felt that the plaintiff should follow no occupation at all. Aside from this, however, the facts as developed by both the medical reports and the plaintiff's own testimony show that, although the plaintiff is extremely nervous and uncomfortable, he could spend several hours a day, at least in his own home, in some kind of sedentary work. Of course, he is not required to sell apples or to start his own business. But the plaintiff is a man who has over 30 years experience in his occupation as a salesman. He made good at that occupation in spite of a rather limited education, and evidently has much resourcefulness and ability in that field. Undoubtedly, he cannot follow his work as a traveling salesman again, but his experience and ability cannot be entirely useless to him. He cannot, in all probability, earn the commissions he was earning at the time of his stroke, but, with at least some effort, he can use his experience and resourcefulness to produce income without overexertion on his part, because his testimony shows that for at least short periods he can be up and about. He is affected in the mornings by a slight loss of equilibrium, but later in the day his difficulty is primarily from weakness and nervousness. His own testimony shows that while he probably would find work difficult or uncomfortable, he could nevertheless engage in some activity directed toward the production of income for himself and his family. Under this testimony and the report of Dr. Chamberlain, the Referee had substantial basis for his conclusion that the plaintiff could engage in substantial gainful work.

The plaintiff insists that the diagnosis of "hysteria" does not prevent the impairment from being any less real than if it had a wholly pathological basis.

This may be so, although the court finds it unnecessary to pass on this point, because even if the plaintiff's complaints are treated as being pathologically based, they reveal no more than what has already been stated. The etiology of the plaintiff's weakness, nervousness, and anxiety can make no difference in the conclusion if those impairments are not sufficiently severe to prevent substantial and gainful work. The Referee found that they were not of that severity, and the severity is not increased by virtue of a nonpathological origin. In other words, regardless of the cause of the plaintiff's impairments, the Referee had substantial evidence to sustain his conclusion that those impairments did not prevent the plaintiff from following a gainful occupation. It is true that the Referee seemed to feel that a psychoneurosis such as hysteria must have a pathological basis before a "disability" could be shown under the act. This may or may not be an incorrect interpretation of the law. But even if it is incorrect, the Referee evidently did not base his conclusion upon the theory that the plaintiff could not recover without a pathological basis for his impairments. Instead, he based his conclusion upon the premise that the impairments did not preclude the plaintiff from substantial gainful activity. That conclusion has substantial basis in the evidence, and must be sustained. It is, therefore, unnecessary to decide whether a nonpathological neurosis is a "mental impairment" under the terms of Title 42 U.S.C.A. § 416(i).

The plaintiff argues that if the court does not reverse the decision of the Secretary, it should at least remand the case for a rehearing. Title 42 U.S.C.A. § 405(g), authorizes such a remand to admit new evidence for "good cause." The showing of "good cause" required to present new evidence to an administrative tribunal need not be so cogent as that required to similarly attack a final judgment of a court of record, because the administrative hearing is informal and nonadversary, and, at least in the case

210

of Social Security claims, the act on which they are based should be given a liberal interpretation to secure its objectives. Wray v. Folsom, D.C.W.D.Ark. 1958, 166 F.Supp. 390. At the same time the court may not altogether dispense with the requirements specifically set forth by the Congress in order to accomplish either a real or fancied Congressional purpose, and some showing of good cause must be made.

■ The court does not feel that any good cause whatever is shown here. Unless there is an inherent error in the decision of the Secretary or the proceedings in the administrative hearing, it would be necessary to apprise the court at least of the general nature of the proof the plaintiff would like to introduce before the court could be justified in remanding for the submission of new evidence. The plaintiff here does not indicate what new evidence he wishes to introduce, if any. It is difficult for the court to conceive of any evidence which would not be merely cumulative. Reports are in the record from Dr. Pat Murphy, a specialist in nervous diseases, Dr. King Wade, Dr. Ralph Downs, a specialist in urology, Dr. Stevenson, the plaintiff's family physician, Dr. Ralph Kramer, the plaintiff's present physician, Dr. Charles Lane, Jr., a specialist in otolaryngology, Dr. Charles T. Chamberlain and Dr. Louis O. Lambiotte, specialists in internal medicine. The plaintiff's attorney represented him in the hearing before the Referee, and developed the case fully at that time. He has also presented a full brief covering the issues. Under these circumstances, the court feels that it is incumbent upon the plaintiff to show what new evidence, if any, he would introduce if the case were to be remanded. There may be times when, for the sake of obtaining clarity in the record, a remand may be made without a showing of what specific evidence would be introduced, but where the case is fully and adequately developed

in the administrative hearing, some showing must be made, at least in a general way, that new and relevant evidence would be introduced. There is no such showing here and no showing of any good cause to introduce new evidence, regardless of what the court might assume that evidence to be.

■ In addition to the authority of the court to remand the case for the presentation of new evidence, Title 42 U.S.C.A. § 405(g), also provides:

"The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing."

The provision of the same section which requires a showing of good cause when the plaintiff seeks to remand the case for additional evidence follows the above-quoted language. The court does not feel that the quoted language authorizes a remand without a showing of good cause. The language quoted is designed to authorize a remand so that further action may be taken in the administrative tribunals in accordance with the orders of the court, as where the court's conclusion calls for a finding by the Referee on some issue not decided by him in the original hearing or a correction of procedural error. It does not give the court authority to ignore the requirement of a good cause but only to remand the case where convenience or necessity requires it for adequate enforcement of the court's judgment.

The court is of the opinion that no good cause has been shown for remanding the case to the Referee, and that there is substantial evidence to support the Referee's conclusion denying the plaintiff's claim. The defendant's motion for summary judgment must therefore be granted, and an order is being entered today in accordance with this opinion.