**William A. DRUMINSKI, Plaintiff,**

v.

**Abraham A. RIBICOFF, Secretary of Health, Education and Welfare of the United States of America, Defendant.**

**Civ. No. A–57–60.**

United States District Court
D. Alaska,
at Anchorage.
June 7, 1961.

Bell, Sanders & Tallman, Anchorage, Alaska, for plaintiff.

Warren C. Colver, U. S. Atty., and James R. Clouse, Jr., Asst. U. S. Atty., Anchorage, Alaska, for defendant.

HODGE, District Judge.

Plaintiff, by his complaint, seeks a review and reversal of a decision of the Hearing Examiner for the Department of Health, Education and Welfare, Social Security Administration, affirmed by the Appeals Council of the Department without hearing thereon, denying to plaintiff disability and insurance benefits under Sections 216(i) and 223 of the Social Security Act as amended (42 U.S.C.A. §§ 416(i) and 423), claiming that the Hearing Examiner erred as a matter of law in holding that the plaintiff did not have a permanent disability and in disregarding the medical evidence adduced at the hearing.

The jurisdiction of the court is based upon Section 205(g) of the Act (Section 405(g), Title 42 U.S.C.A.) which provides that:

> "The Court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive * * *"

The defendant filed an answer alleging that the findings of fact of the Examiner are supported by substantial evidence and are therefore conclusive upon this Court and submitting a full transcript of the plaintiff's claim, the hearing before the Examiner, the decision ren-

dered thereon, and the ruling upon the appeal by the Appeals Council on June 14, 1960. The matter was submitted to the Court for determination upon such transcript.

The term "disability" is defined by the statute as meaning:

"Inability to engage in any sub-, stantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or would be of long continued and indefinite duration." Sections 216(i) and 223(c) of the Act, above.

Section 223(c) further provides that:

"An individual shall not be considered to be under a disability unless he furnishes such proof of the existence thereof as may be required."

The sole issue to be determined by this Court is whether or not the plaintiff has sustained the burden of proving such disability and whether or not the finding of the Examiner denying such disability is supported by substantial evidence.

In his original application for disability benefits to the Department, Bureau of Old Age and Survivors Insurance, filed October 3, 1958, at Juneau (Exhibit 1, Tr. p. 60), plaintiff stated the nature and extent of his impairment as

"Mercurial poisoning — 1942, growing worse until I had to quit— have no strength at all. Get sick all over at slightest exertion."

On appeal from the decision of the Bureau denying such relief a hearing was had before the Examiner at Anchorage on May 2, 1960, at which time the Examiner had before him two reports by Dr. James E. O'Malley (Exhibits 4 and 11, Tr. pp. 67, 77). Dr. O'Malley was the only medical witness called by the Examiner and was questioned at some length regarding these exhibits. In the first report, under date of October 3, 1958, the doctor ascribed plaintiff's condition to be largely due to arteriosclerosis and hypertension, mentioning a traumatic amputation of plaintiff's left leg in 1912, for which plaintiff had worn a prosthesis ever since. In his later report under date of August 24, 1959, the doctor discusses numerous symptoms of the patient at considerable length, with a diagnosis of a "marked scoliosis of the lumbosacral region, secondary to a traumatic amputation of his left leg, with hypertrophic changes affecting the bodies of the vertebrae," and that the pain of which plaintiff complains in his chest is a result of "hypertrophic changes" affecting the vertebrae and chest cage. He concludes that:

"I feel that this individual is totally and permanently disabled because of a combination of these two disabilities the scoliosis and arthritis of his spine, as well as the severe anxiety state of mind which has been engrafted upon him. I respectfully suggest that this individual's case be opened and that he be compensated for total disability at this time as I am morally certain that he will never regain his usual productivity." [1]

Such medical opinion is considered advisory and when not repudiated in any way by substantial evidence an adverse decision based upon these ultimate facts should be set aside as based on suspicion and speculation. Kohrs v. Flemming, 8 Cir., 1959, 272 F.2d 731; Hill v. Fleming, D.C., 169 F.Supp. 240. But such medical opinion, if not based upon concrete facts sufficient to reasonably support the conclusion reached as

---

[1]. The same diagnosis and conclusions were later submitted by letter to plaintiff's counsel as an exhibit before the Appeals Council (Exhibit Ac–1, Tr. pp. 4, 81–83), together with a letter addressed "To whom it may concern" by Dr. R. E. Harrell, stating his "impression" that this man "is permanently and totally disabled for any remunerative physical labor due to his heart condition, nephritis, and absence of his left leg" (Exhibit Ac–2, Tr. p. 84), which was apparently not considered by the Council as conflicting with the testimony before the Examiner.

to disability, may be rejected. United States v. Howard, 5 Cir., 64 F.2d 533. In construing a similar clause as to War Risk Insurance the federal courts have held that medical opinions that claimant became totally and permanently disabled are without weight, at least as against facts directly established. United States v. Spaulding, 293 U.S. 498, 506, 55 S.Ct. 273, 79 L.Ed. 617; Hamilton v. United States, 5 Cir., 73 F.2d 357; 32 C.J.S. Evidence § 534, p. 247. In construing this rule regarding disability benefits under the Social Security Act the court, in Dean v. Flemming, D.C., 180 F.Supp. 553, 556, states that:

"The court here considers the whole record and accepts this opinion evidence only as corroborative of positive proof from other sources."

The oral testimony of the doctor before the Examiner failed to substantiate his opinion as to the disability of the plaintiff. He stated that plaintiff's primary complaint was that his heart was bad but he found no evidence of any heart disease. (Tr. pp. 30, 31, 39, 41). With reference to the arteriosclerosis the following occurred (Tr. p. 36):

"Q. He hasn't moderate to severe arteriosclerotic heart disease, according to— A. (interrupting) Yes, he has.

"Q. I thought you said there is no organic heart disease. A. You can have it and not have too many symptoms. You don't have to have them. I'm fifty-two years old, and I've got arteriosclerosis, and you see it in the films, and I'm fairly spry, I think.

"Q. Is there anything about his cardiovascular system that would prevent him from engaging in light or sedentary work if he were so motivated? A. Cardiovascular system? No, he can work.

"Q. He can work? A. But, if you go—

"Q. (interrupting) There is nothing about the cardiovascular system that would prevent his working? A. I don't think so.

"Q. When you say he can work, what kind of work do you have in mind? A. Light work.

"Q. You are speaking of light physical work? A. Yes."

Brief reference was made by the doctor to arthritis in the claimant's spine, causing "pain in his chest," (Tr. pp. 31, 40–41), but regarding the disability from this condition the following testimony appears (p. 41):

"Q. Is there anything about the arthritic condition that would prevent him from engaging in light work or sedentary work?

"A. I don't think so."

With respect to the severe anxiety state of mind we find the following (Tr. pp. 42–43):

"Q. Besides the x-ray findings of arthritic involvement, there is no loss of function? A. I don't think so. Not marked, anyway. This man's difficulty is emotional.

"Q. I understand, doctor. A. That's his whole problem."

\* \* \* \* \* \*

"Q. Doctor, I don't have any more questions to ask you. A. This man was made ill by his physician.

"Q. You state that in Exhibit 11 for identification. I understand it fully. A. And that's what his trouble is. And all the tests I've done on him, I find nothing out of the way. The fact that he did have a tumor removed from his rectum has nothing to do with this question. There's no reason why he cannot work except that he has been frightened by some doctor, and the damage has been done."

■■■ The burden of proof to establish the disability of the "defined severity" of the Act by reason of a "medically determinable physical or mental impairment" is upon the claimant. Corn v. Flemming, D.C., 184 F.Supp. 490; Adams

v. Flemming, 4 Cir., 276 F.2d 901; Lewis v. Flemming, D.C., 176 F.Supp. 872; Fuller v. Folsom, D.C., 155 F.Supp. 348. It is also held that the finality of the findings of the Examiner as to the "substantial gainful activity" extends to inferences and conclusions drawn from the evidence. Adams v. Flemming, supra, 276 F.2d at page 903.

It is true that plaintiff testified that he was wholly unable to work, due to pain, and that "I can't even take a job sitting at a desk because I can't stand sitting all the time." But there must be substantial medical evidence to substantiate plaintiff's claim. Fuller v. Folsom, supra, 155 F.Supp. at page 354.

It therefore appears from the entire record that the findings of the Examiner, affirmed by the Appeals Council, are supported by substantial evidence.

In this connection it is also held that the "etiology" of the plaintiff's weakness, nervousness, and anxiety can make no difference in the conclusion if those impairments are not sufficiently severe to prevent substantial and gainful work. Hallard v. Flemming, D.C., 167 F.Supp. 205, 209. The Examiner's finding in this respect was that "for a non-psychotic functional disorder, such as an anxiety reaction, to be of disabling magnitude there must be evidence that it is long-standing, severe, and irremediable." The evidence fails to establish such.

As to the "light or sedentary work" suggested by the Examiner, I am unable to find that such comes within the purview of those cases holding that the inability to engage in any substantial gainful activity does not mean that the claimant should be completely disabled or helpless or does not include some slight work of an irregular, spasmodic character, but only what is reasonably possible.[2] And it is also held that a "sedentary occupation" could certainly be "substantial" and that the proper test of "substantial gainful activity" is the possibility of finding employment in any field and is not restricted to the type of work of the wage earner prior to disablement. Hallard v. Flemming, supra; Liles v. Flemming, D.C., 176 F.Supp. 303; Fuller v. Folsom, supra.

Finally, there is another compelling reason why the decision of the Examiner should be sustained upon the evidence presented, for it was shown by plaintiff's own testimony that he had voluntarily quit his work, in which he was engaged as a machinist, some two years prior thereto and had not since then worked or looked for work. It was not the intent of Congress to provide disability benefits for all who had some physical illness and chose to retire without making any effort to obtain any work. Adams v. Flemming, supra.

It may well be that plaintiff now finds himself disabled, but his disability must be determined as of the date of his application or when his insured status is terminated. Pruitt v. Flemming, supra. He has not sustained this burden of proof. The decision of the Examiner and Appeals Council must therefore be affirmed, without prejudice to the right of plaintiff to file a further claim based upon present medical findings.

2. Corn v. Flemming, supra; Klimaszewski v. Flemming, D.C., 176 F.Supp. 927; Teeter v. Flemming, 7 Cir., 270 F.2d 871; Sebby v. Flemming, D.C., 183 F.Supp. 450; Pruitt v. Flemming, D.C., 182 F. Supp. 159; Kohrs v. Flemming, supra; Dean v. Flemming, supra; Lease v. Flemming, D.C., 178 F.Supp. 169.